J. M. BAILEY v. A. J. RUTJES and others.

*Contract—Promise of a third party.*

Plaintiff delivered lumber under the order of A, the lessee, which was used in improvements upon the premises of B and C, the lessors, and sued the lessors for the price thereof ; *Held*

(1) To entitle plaintiff to recover, he must show a contract, express or implied, on the part of the lessors to pay ; and it was error to charge that if plaintiff *believed* he was furnishing it upon their credit they were liable.

(2) Ordinarily, an inference of fact will arise against the owner of premises that he promised to pay for improvements thereon, in case he stands by in silence and sees work done or material furnished, and afterwards accepts and enjoys the benefits derived therefrom.

(3) If the lessors, knowing that plaintiff expected them to pay for the lumber, acted in such wise as to create a belief on his part that they would do so and thereby induced him to deliver it, a promise on their part to pay might be inferred. But if not originally liable by reason of some contract, a promise to pay after the lumber was furnished and used, would be merely gratuitous and not a binding contract.

(*Brunhild* v. *Freeman*, 77 N. C., 128 ; *Pendleton* v. *Jones*, 82 N. C., 249 ; cited and approved.)

CIVIL ACTION tried at Fall Term, 1881, of BURKE Superior Court, before *Seymour, J.*

This action is brought to enforce a mechanic's lien upon the property of the " Glen Alpine Springs Company," composed of the defendants Walton and Pearson, for lumber

furnished and used in repairing and erecting buildings on its premises.

On the part of those defendants, it is insisted that the lumber was not furnished to their company, but to their co-defendant, Rutjes, and upon his sole responsibility—he having leased the premises for five years, and being in possession thereof, at the time the lumber was ordered and delivered, though he has subsequently surrendered his lease and restored the possession to the said defendants. On the . trial the plaintiff testified that he delivered the lumber according to certain bills, (produced and numbered 1, 2, 3, &c.) furnished him by Rutjes, some of which were signed by Rutjes, while others were not. That he had no talk with either of the defendants, Walton or Pearson, before such delivery, but that he had previously delivered two other bills of lumber on the same premises and received from Rutjes orders upon the other defendants for the money, one of which the defendant Walton had paid, and the other partially paid, and that this occurred while he was engaged in sawing bill No. 1. He also testified that after the lumber was delivered on the premises, he applied to the defendant Walton for payment, who offered him a note on Rutjes which he declined, and while he had had no talk with the defendants, Walton and Pearson, about the lumber before its delivery, they had seen it delivered and knew that it was used on the premises; and on one occasion while the plaintiff was sawing the lumber the defendant Pearson ordered, in person, and paid for a lot of laths which were used in the buildings on the premises ; that he had no acquaintance with Rutjes, who was a stranger in that part of the country, and made no contract with him in regard to the lumber.

The plaintiff also introduced the head-carpenter, and other workmen employed on the premises, who testified to the use of the lumber in the buildings, and that the defend-

ant Walton was frequently present, giving directions about the work, and that he expressly promised to pay them their wages.

For the defence, the defendant Walton testified that one of the terms of Rutjes' lease was that he was to make the improvements on the premises, and to deduct the costs from the stipulated rent; that he had nothing to do with the contract with the plaintiff, and had refused to become responsible to him for the lumber, when asked to do so, and though occasionally at the springs while the work was going on, he had never assumed to direct it; that the money paid on the two orders referred to by plaintiff was paid in consequence of an agreement that had reference to those particular lots of lumber, and was in fact a loan to Rutjes. This witness denied that he had paid or agreed to pay the workmen their wages.

The defendant, Pearson testified in substance the same with his co-defendant Walton. And one Smith, who was clerk to Rutjes testified that he had made the contract for the lumber with plaintiff, as agent for Rutjes, and had told plaintiff that he, and not the other defendants was responsible therefor.

For the defendants, special instructions were asked which the court declined to give, and instructed the jury that to make the defendants liable, it was necessary that there should be a contract either express or implied between the plaintiff and themselves. That if the plaintiff reasonably believed when he was furnishing the lumber that it was upon the credit of defendants and was induced to so believe by their acts, they were liable; and that in this connection they might consider all the conduct of defendants as testified to by the witnesses. That if they believed that plaintiff furnished the lumber solely upon the credit of Rutjes, or that plaintiff agreed to look only to him for pay, then the defendants would not be liable. To which charge the de-

fendants Walton and Pearson excepted, and after verdict and judgment against them, they appealed.

*Messrs. Jones & Avery* and *P. J. Sinclair*, for plaintiff.
*Mr. G. N. Folk*, for defendants.

RUFFIN, J.   The action is one for goods sold and delivered, and as said by His Honor, in order to maintain it, the plaintiff must show *a contract*, express or implied, on the part of the defendants to pay him for the lumber furnished.   As the case discloses no facts going to show the existence of any express contract, at least prior to the date of the delivery, we are driven to conclude that the verdict was, or may have been, controlled by that part of the instructions which had reference to the implied contract.

The defendants complain of this, and we think justly so, because it made the case to turn, not upon the *agreement* of the parties, but upon the reasonable belief of one of them. To constitute any contract, there must be a proposal by one party and an acceptance by the other, resulting in an obligation resting upon one or both; or in other words there must be a *promise.*   Pollock on Contracts 5.

The fact then that the plaintiff expected (however reasonably) the defendants to pay him for the timber, could certainly not be sufficient of itself to establish the existence of a contract, on their part to do so.   *Brunhild* v. *Freeman,* 77 N. C., 128; *Taft* v. *Dickinson,* 6 Allen, 553; *Pendleton* v. *Jones,* 82 N. C., 249.

It must be shown further, that in some way, they assented to be charged either in terms or by conduct from which the law will infer their assent.

It is unquestionably true, that if in the absence of all express understanding, one stands by in silence (and much more if he actively encourages) and sees work done, or material furnished for work upon premises belonging to him,

and of which he must necessarily get the benefit, and afterwards he does accept and enjoy it, a promise to pay the value thereof may be inferred, and ordinarily will be; and the inference under the circumstances will be purely one of fact, viz., whether the party's conduct has been such that a reasonable man might understand from it, that he meant to recognize the benefit as one conferred on himself, and to pay for it. In such a case, there can be no difficulty in making such an inference against the party, since the premises being his, the benefit of the labor done, or the material furnished must necessarily result to him, and withal, he had the opportunity and the power to countermand it, if he would.

But in the case at bar, the defendants, if their testimony is to be believed, had leased the premises to Rutjes for five years, and he had undertaken to have the improvements made, which called for the use of the lumber furnished by the plaintiff. They were therefore absolutely without the power, either to give or to withhold their sanction to its delivery and use, and ought not to be required to pay for it, unless they knew, or had reason to believe that the plaintiff was looking to them for pay for his lumber, and allowed him to deliver it under that expectation and without objection on their part. *Day* v. *Cayton*, 119 Mass., 513; *Wells* v. *Banister*, 4 Mass., 514. And it was in its failure to call the attention of the jury to this view of the case, that the error of the charge, as we conceive, consists. The instruction given should have been that if the defendants knowing that the plaintiff expected them to pay for the lumber acted in such wise as to create a reasonable belief on his part, that they would do so, and thereby induced him to deliver it, then the jury might infer a promise on their part, to pay for it.

In the present form of the action the question is, whether there was a subsisting contract between the parties in re-

gard to the lumber, or not, and the doctrine of equitable estoppel has no application to the case.

If not originally liable by reason of a contract of some sort, the defendants cannot be made so because of their having resumed possession of the premises with its. improvements, upon the surrender of their tenant.

It is true they thus derive some advantage from the materials furnished by the plaintiff, but that cannot be avoided, as it is impossible for them to reject, or restore to the plaintiff that benefit without a surrender of their own property; and this the law does not require them to make. Pollock on Contracts, 29. Nor under such circumstances would a promise to pay, made after the lumber had been furnished and used, be binding on them, since it would be purely gratuitous and as such would. make no contract.

For the reasons suggested, this court is of the opinion that the defendants are entitled to have the cause tried by another jury; and this renders it unnecessary that we should consider other points made as to the evidence received and its effect, as they may not again arise.

Error. *Venire de novo.*