Error.

LEWIS BLOUNT v. W. A. GUTHRIE.

*Implied Contract—Evidence—Judge's Charge.*

1. Where one stands by in silence and sees work done or material furnished for work done upon premises belonging to him, of which he accepts the benefit, a promise to pay the value thereof may be inferred from the circumstances.

2. Therefore, where the defendant contracted with R to build a house—including the necessary plumbing for gas and water—under the supervision of an architect, and R contracted with the plaintiff to furnish the materials and do the plumbing, but R was discharged before completing his contract, the defendant taking charge of the work and the plaintiff subsequently completed his; *Held*, (1) That there was some evidence to go to the jury that the defendant had assumed to pay the amount due the plaintiff under his contract; but (2) that this was an inference of *fact* for the jury and not of *law* for the Court, and it was error to instruct the jury that the law implied a promise to pay from these facts.

CIVIL ACTION, originally commenced before a Justice of the Peace for the County of DURHAM, and carried by appeal to the Superior Court of that county and tried before *Merrimon, J.*, at February Term, 1888.

On the 5th of August, 1886, the defendant entered into a written contract with one Joseph Ransley, by which Ransley was to build for him a dwelling house in the town of Durham. The written contract and specifications are set out in full in the record, and are minutely drawn and of considerable length, but for the purpose of this controversy it is only

necessary to state that Ransley was to complete the dwelling "to the full and entire satisfaction of the architect"—one Pugin, employed by defendant—by the 1st day of November, 1886, for which the defendant was to pay to him the sum of $3,484, as follows:

"When the foundations are complete and ready for framing, $225; when the entire building is under roof, $700; when the entire building is plastered, $200; when the entire wood work is completed, $1,000; and the final payment when all work of every kind is completed and upon a written acceptance of such by the architect."

The work was to be done "in accordance with drawings prepared by the architect, under his supervision and to his satisfaction and acceptance." Among other things, the specifications provided for gas and water pipes.

The plaintiff testified in substance that he was engaged in plumbing, and did work on defendant's house for hot and cold water and gas, and furnished the material, under a contract made with Ransley.

The work was begun during the second week in November, and finished sometime in December, 1886. There was an estimate submitted by witness and accepted by contractor for $226; in this estimate there was a water tank which was taken off at defendant's suggestion, value $25.

Witness was directed by Pugin to make the connection for an additional gas pipe in dressing room. Pugin looked over and saw all material, and gave the order. Defendant paid for the extra gas pipes. "Pugin pointed out every position where pipes, &c., were to be placed; defendant was there once or twice during the work; he did not tell me he had discharged Ransley, and I did not know it till my conversation with Guthrie in last of December, when work was done; Guthrie directed the pipe from tank to boiler to be stopped; these directions were all observed by me; the $200 has not been paid; made demand before I brought this suit; my

work was included in the contract with Ransley; don't know whether Ransley had made the contract when I furnished my estimate; I had put in all the gas pipe before I ever spoke to defendant about it; it was not defendant who first ordered me to put in the extra piece of gas pipe—it was Pugin; for that piece of pipe I have been paid by defendant; before the contract was accepted, contract to be approved by Pugin; he said he had not yet seen Mr. Guthrie, but he thought he would accept my estimate; Pugin asked me in July to make my estimate and hand it to Ransley; I did so; most of the work was done after Ransley quit; Hill was Ransley's foreman; Guthrie said he had taken the contract away from Ransley—that he had failed to comply; told Guthrie he would look to him for the money; Guthrie said Ransley had been gone for several weeks."

T. B. Hill testified: "Ransley was discharged by Mr. Guthrie's direction for drunkenness; I then took charge; Guthrie hired me to take charge of the house and superintend it; Blount at that time had not finished his work, and had not finished it at the time I completed the work; while the work was going on Mr. Guthrie was there; Pugin gave orders for changes, &c., in defendant's name; Pugin had charge of the work, to see that it was carried out according to plans and specifications; Guthrie said he had never authorized Pugin as his agent, but had authorized me; he said whatever work was done after Ransley left he was responsible for, for he had assumed the work; I think plaintiff was nearly through before Ransley was discharged."

Plaintiff recalled: "The pipe that Guthrie stopped was the first water pipe put in—all water pipe was put in after 13th November; $37.08 done before 13th November; Guthrie was there and saw me at work, and did not notify me."

Defendant testified: "I was to furnish the lot and the old house that stood upon it, and Ransley was to build me a house for $3,484, to be finished by 1st November, according

to plans and specifications by Pugin; plumbing, &c., in contract; Pugin was my architect to superintend—not authorized to make contracts; in October I came to Durham; found gas pipes had all been put in; was in the house; called Blount in and asked him if he considered the gas piping done; he answered, 'yes;' never paid Blount for anything but that amount for the price for a drop light; never made myself responsible for any other item; I directed water tank to be left off; had no other conversation with Blount till last of December; he had then completed all his work except putting on the cocks and connecting the pipes with the bath tub; I took charge 17th November; I inspected the premises—went over the whole place; no work was done by plaintiff between 13th and 17th November; discharged Ransley 17th November; time had passed for completing the house, and it was about half done; at the time I discharged Ransley I had paid him $1,897.95—this prior to 17th November, 1887, at the time the plaintiff's lien was filed, to-wit: January 25th, 1887, I had paid on account of the work, $3,867.80, including what I paid Hill for Ransley on 17th November; I paid him more than the work was worth; when I took charge entire building was under roof but not plastered; several rooms had not been; the entire wood work was not half done—it was probably one-fourth done. At date of discharge defendant would, under his contract, have owed Ransley $925; never have had any written acceptance of house by architect; Hill receipted as Ransley's foreman; I saw Blount working there before Ransley's discharge, but made no enquiry as to whether he had been paid; when payments made I had not written certificates from Pugin that there were no liens; did not give Ransley three days' notice of intention to take charge of the contract; the man I talked to about drop light spoke as sub-contractor under Ransley; never had anything to do with Blount's estimate; I never saw it or heard of it till lien was filed; Blount never notified me of

any claim he had before I discharged Ransley; I have never made any settlement with Ransley; did not go into details as to what the value of the work was up to date of discharging Ransley; I sent the checks for Ransley to Pugin in order that he might hold them if the work had not been done, or pay them over if it had been done."

Pugin testified: "I never made any contract with Blount; Blount's work nearly all completed when Ransley discharged; I think, when Ransley discharged, frame complete; roof partially on; small amount of plastering on; according to contract-price work was about half done; I handed Blount's esestimate to Mr. Guthrie January 26th, 1887; I had never seen it till Hill gave it to me; this was after Ransley was discharged, before Blount's suit; sent the estimate to Guthrie January 26th, 1887; Ransley had not complied with the contract; the work had been neglected, consequence failure to finish the house; I asked Blount to make an estimate, probably; I never accepted the house; never notified defendant that there were no liens upon it; accepted Blount's work in writing."

With the record there is a copy of the "estimate of gas and water pipes for house of W. A. Guthrie," dated July 12th 1886, and signed by Lewis Blount, and also copies of checks of the defendant payable to the order of Joseph Ransley and endorsed by the said Ransley and B. A. Pugin, drawn in August, September and October, aggregating $1,125, and the balance of $1,897.95 was paid to Hill as Ransley's foreman on November 13th, 1886.

The issues submitted were:

"1. Did plaintiff do work and labor for and furnish material under a contract with the defendant?

"If so, what sum, if any, is due from defendant to plaintiff for such work and material?"

The following instructions were asked for defendant:

7

" 1. That there is no evidence of any contract by the defendant to pay the plaintiff for the work done by him.

" 2. That the provisions of the contract between Guthrie and Ransley were for Guthrie's protection, and no one not a privy to said contract can have benefit from it; that Guthrie had a right to pay as he chose to Ransley, and in advance, if he wished to do so; and the plaintiff having relied upon Ransley, could only look to him for pay.

" 3. That as Guthrie was not indebted to Ransley at the time the plaintiff instituted his action, there was no liability on his part to plaintiff, as plaintiff could only recover such amount from Guthrie as he, (Guthrie, was then owing to Ransley.

" 4. That the burden of proof is upon the plaintiff, and it is his duty, by a preponderance of evidence, to satisfy the jury that the defendant contracted with him to do the work, and if he has failed to satisfy the jury he is not entitled to recover.

" 5. That under the contract between Guthrie and Ransley, Ransley was only entitled to three days' notice if he failed to supply materials during the progress of the work; and as the time for the completion of the work had expired, Guthrie had the right to take charge of the work after the 1st day of November, 1886, without any notice to Ransley, and complete the work; and unless Blount did the work after that time under a contract with Guthrie (or Pugin, as his agent, or if they knew of his doing the work after that time and accepted it) then the plaintiff cannot recover."

His Honor refused to give the first, third and fifth instructions, and declined to give the last clause of the second instruction, to-wit: " And the plaintiff, having relied upon Ransley, could only look to him for pay."

To the refusal of his Honor to give the instructions asked for the defendant excepted.

His Honor charged the jury as follows:

"(1). If defendant discharged Joseph Ransley, the contractor, without making any settlement with him and took charge and control of the work himself, and permitted and encouraged the plaintiff to go on and supply materials and perform work, to complete the engagement he had made with Ransley, and plaintiff did go forward after Ransley's discharge and complete the engagement he had made with Ransley, and his materials and work were accepted by Pugin, defendant's architect, for defendant, and used and enjoyed by defendant, the law implies a promise by defendant to pay the plaintiff the value of the materials furnished and labor performed by him, and the plaintiff would be entitled to recover not only for the work and materials done and furnished after, but also before, Ransley was discharged.

"(2). Was the plaintiff unable to carry out his contract with Ransley (if the contract was between plaintiff and Ransley only) by the act of the plaintiff? If the plaintiff by his act in discharging Ransley prevented him from going on with his contract, his act necessarily made it impossible for plaintiff to carry out his contract with Ransley, and the plaintiff could only proceed by the defendant's permission, and if by defendant's permission he did go forward, he will be entitled to recover the value of his materials and labor, if he has not already been paid, and the plaintiff would be entitled to recover not only for the work and materials done and furnished after, but also before, Ransley was discharged.

"(3). If plaintiff supplied materials and performed labor, made a contract with Pugin professing to act as agent for defendant, and defendant received, used and enjoyed the materials and work, it will be the duty of the jury to answer the first issue in the affirmative."

To the first, second and third instructions of his Honor, above set out and mentioned, the defendant excepted.

The jury responded " yes " to the first issue, and " $200 " to the second.

There was judgment for plaintiff, and defendant appealed.

*Mr. W. W Fuller*, for the plaintiff.
*Messrs. J. W. Graham* and *John Hinsdale*, for the defendant.

DAVIS, J., (after stating the case). There was no error in refusing the first instruction asked for by the defendant. There was evidence to go to the jury from which a contract might be implied.

The familiar principle, so confidently relied on by the defendant "that where there is a written contract concerning the whole subject matter" there can be no implied promise, we think finds no application in the facts of this case.

It was not pretended that there was any written contract at all between the plaintiff and the defendant. In fact the learned counsel for the defendant deny that there was any contract, express or implied, by which the defendant was to pay the plaintiff, and they say that the evidence shows that the work was completed under the plaintiff's contract with Ransley, and referring to the evidence they ask, " Did not Guthrie have the right to suppose under these circumstances that Ransley himself had paid Blount out of prior remittances or otherwise arranged with him?" On the contrary, we cannot see how in any view of the evidence the defendant could suppose that Ransley had paid or arranged to pay or would pay Blount for work done after the discharge of the former, and while a different view is insisted upon in the printed brief of the able and learned counsel for the defendant, we do not understand them in the oral agreement before us as denying the right of the plaintiff to recover for so much of the work as was done by him after the defendant discharged Ransley and undertook himself to have the dwelling completed. It appears from the evidence that after the defendant discharged Ransley the work was continued under Hill, who had been Ransley's foreman, and who was em-

ployed by the defendant "to take charge of the house and superintend it," and the dwelling was completed under the same foreman and under the direction and supervision of the same architect, without any notification to the plaintiff of any change and without the knowledge on his part of any change until after he had completed the portion of the work which he had undertaken.

If this evidence is to be believed, and there is no conflict in this respect, might it not be reasonably inferred that the defendant meant to pay, certainly for the work done after the discharge of Ransley? Would not this be fairly and justly implied, and was not the evidence proper to go to the jury to be considered by them upon the question of implied liability of the defendant to the plaintiff, not only for the work and labor performed and materials furnished after, but also before, the discharge of Ransley? If Ransley was discharged and the work continued by the direction of the defendant under the same foreman and architect directing the details, without any notification to the plaintiff and without any opportunity on his part to elect to continue or discontinue the work if he was not to be paid for it, was there a reasonable inference or implication that the defendant would pay for it?

In *Bailey* v. *Rutjes*, 86 N. C., 517, it is said, "It is unquestionably true that if, in the absence of all express understanding, one stands by in silence (and much more if he actively encourages) and sees work done, or material furnished for work upon premises belonging to him, and of which he must necessarily get the benefit, and afterwards he does accept and enjoy it, a promise to pay the value thereof may be inferred and ordinarily will be, and the inference under the circumstances will be purely one of fact, viz.: whether the party's conduct has been such that a reasonable man might understand from it that he meant to recognize the benefit as one conferred on himself, and to pay for it. In such a case

there can be no difficulty in making such an inference against the party, since the premises being his, the benefit of the labor done or material furnished must necessarily result to him, and withal he had the opportunity and the power to countermand it, if he would."

But his Honor instructed the jury that if certain facts stated were found to exist " the law implies a promise by defendant to pay," &c. We think in this there was error, which entitles the defendant to a new trial. It was not an inference of law but of fact to be determined by the jury, and it was for them to say whether from all the evidence the conduct of the parties, and under all the circumstances the plaintiff might reasonably understand that the defendant was liable to him for the work done, and a reasonably implied obligation or promise on the part of the defendant to pay him for the work. These are questions of fact and not of law, and it is for the jury to find from the evidence whether there was or was not a reasonably implied contract.

For this error the defendant is entitled to a new trial, and it becomes immaterial to consider the other questions presented as they are not involved in the aspect of the case indicated in this opinion.

Error.