## OATES v. MUNDAY.

(December 22, 1900.)

1. *Homestead—Allotment—Irregularity—Judgment.*

> Where a homesteader acquiesces in allotment of homestead for many years, a grantee of homesteader will not be permitted to defeat judgment creditors by proof of purchase in good faith for a full price.

2. *Homestead—Allotment —Exceptions —Appraisers —The Code, Sec. 519.*

> That appraisers laying off a homestead were sworn by a deputy sheriff, is, at most, an irregularity, and can not be taken advantage of in a collateral proceeding if exceptions were not taken in apt time.

3. *Evidence—Homestead—Advice of Counsel.*

> In a contest between judgment creditors and purchasers of land subject to the judgment, the wrong advice of counsel given to the latter is inadmissible.

CIVIL ACTION by Oates, White & Co., Stoneberger & Richards, James Carey & Co., Eddleman & Brown, and Samuel Bevens & Co., against J. W. Keener (Administrator of W. A. McCoy), A. P. Munday and wife Ada, and J. A. Munday and wife Belle, heard by Judge *O. H. Allen,* at Fall Term, 1900, of MACON Superior Court. A jury trial was waived and it was agreed that the Court might find the facts and answer the issues. From a judgment for plaintiffs, defendants appealed.

*Jones & Johnston, W. E. Moore,* and *Shepherd & Shepherd,* for plaintiffs.
*Kope Elias,* and *Ferguson & Son,* for defendants.

FURCHES, J. This is an action by judgment creditors to enforce judgment liens. In 1879 plaintiffs recovered several judgments against W. A. McCoy before Justices of the Peace, which were duly docketed in the Clerk's office of Macon County. Before the taking and docketing of plaintiffs' judgments, Clark and other creditors of said McCoy had taken judgments against him, which were docketed prior to plaintiffs' judgments. Clark and said other judgment creditors of McCoy had caused executions to issue upon their judgments, which were placed in the hands of the sheriff of Macon County for collection. The sheriff, under said execution, by his deputy (one Jacobs), caused the homestead of said Mc-Coy to be laid off and allotted. The homestead, as laid off and set apart to said McCoy, was a house and lot in the town of Franklin, upon which lot said McCoy resided. A report was made by the appraisers, giving metes and bounds, which they returned to Court, and the same was properly docketed and recorded. It appears in all things to be regular and in compliance with the statute, except it states that the appraisers were sworn by said Jacobs, the deputy sheriff. Under these executions issued upon the judgments of Clark and others, the sheriff sold the excess of McCoy's property after laying off his homestead as stated, and applied the proceeds to their judgments, but they were not sufficient to satisfy them, and on May 22, 1883, they were compromised by the defendant W. A. McCoy and his wife giving their notes for the balance of said judgments, secured by a deed of trust made to one Crawford on the property allotted to the defendant McCoy as a homestead, and on other property, in which the wife of McCoy joined. And the judgments of Clark and others, upon whose judgments the homestead had been laid off, were receipted in full upon the docket. But these compromise notes secured in the trust were not paid, and the trustee, Crawford, sold the land conveyed in the

trust; and Mary A. McCoy, wife of W. A. McCoy, became the purchaser at the trust sale, and a deed was made conveying the property to her, including the lot that had been allotted to her husband as a homestead. Some time after, the wife, Mary A. McCoy, purchased the land at the trustee's sale (the exact date seems not to be stated), and probably after the death of the husband, she sold to A. P. Munday, as the record stated that A. P. Munday bought the lot assigned as a homestead in good faith and for a full price, paying $2,500 for it; that he kept it a short time, and sold it to J. A. Munday on the 18th of May, 1893, for $2,660. The defendants therefore allege that the defendant J. A. Munday is now the rightful owner of said lot; that Mary A. McCoy acquired title from Crawford (the trustee), A. P. Munday from Mrs. McCoy, and J. A. Munday from A. P. Munday. They allege that the homestead of W. A. McCoy was never legally laid off and assigned to him, for the reason that Jacobs, the deputy sheriff, superintended laying it off, and that the return of the appraisers shows that he swore the appraisers, and for this reason the allotment is void, and does not suspend the running of the statute of limitations, which is pleaded, and that plaintiffs' right of action is therefore barred. The defendants alleged and offered to prove that George A. Jones, an attorney living at Franklin, was consulted by defendants before they bought of Mrs. McCoy, and he gave it as his opinion that Mrs. McCoy's title was good, saying that he had bought a part of the homestead property from her. But upon objection this evidence, they say, was erroneously excluded. The plaintiffs, in reply to defendants' objection, as to Jacobs, the officer who had the homestead laid off and swore the appraisers, were allowed to offer in evidence a copy of an oath that Jacobs had taken as deputy sheriff, and which had been acknowledged and registered.

The oath, in form, is very full and complete as to the discharge of his duties as an officer, and to obey the Constitution and laws of the United States and the Constitution and laws of North Carolina. There were some other exceptions taken, but these are all that seem to affect the merits of the case, and all that are necessary for us to consider.

The fact that defendants bought for a full price, in good faith, and without notice, can not benefit them, if the plaintiffs' liens still continue. This doctrine of full price and without notice only applies to equities, and not to legal title, or liens, created by law, as docketed judgments. But, if that doctrine applied, the defendants had legal notice—the docketed judgments and the record of the allotment of the homestead. The evidence as to what Jones said about the title was irrelevant and incompetent. It was not offered with the view of showing fraud, and, if it was a mistake as to the title of Mrs. McCoy being good, he does not stand alone in not knowing the law.

The question, then, comes down to the homestead. If the homestead allotted to W. A. McCoy was void, the judgments were barred by the statute of limitations, the judgment liens discharged, and the plaintiffs have no right of action, and the defendants' title is good. But there is quite a difference in its being void and in its being irregular. If the sheriff had acted in person in laying off this homestead he could have sworn the appraisers. And the only irregularity alleged is that the appraisers were sworn by the deputy sheriff. In every other respect it seems to have been regular and complete. Section 3316 of The Code provides that, when a public officer is authorized to administer an oath, his deputy may do so, if he is sworn. As the sheriff could have sworn these appraisers, and as it was shown that Jacobs was his sworn deputy, the plaintiffs contend that he was author-

ized to swear the appraisers. This would seem to be so, but we find no statute authorizing deputy sheriffs to be sworn, as we do as to deputy clerks, unless this section of The Code authorizes it. But whether it does or does not, and whether it might not have been taken advantage of by exceptions filed in apt time, as provided by statute, we do not think it necessary to decide. It was, at most, but an irregularity. *Brickhouse v. Sutton,* 99 N. C. The homestead was, in fact, laid off and the return filed with the judgment roll, noted on the docket, and registered as the statute directs. The time allowed by law for filing exceptions was intended to give time to parties interested to make their objections. And when they do this they have a standing in court, and will be heard. If the fact that this homestead was laid off by Jacobs, a deputy, and that he swore the appraisers, was a ground for exception, the exception should have been made within the time allowed by law. The Constitution gives to every insolvent debtor a homestead. It is not the appraisers that give it to him. The appraisers only locate the homestead so as to determine whether there is an excess or not, so that the excess may be sold. That was done in this case, and the excess sold; and that part of McCoy's real estate that was allotted to him was not sold, but he lived on it under the protection of this allotment until his death. Both he and Mrs. McCoy knew of this allotment of homestead. It was recognized by them in the compromise of the claims of Clark and others. It was recognized by Mrs. McCoy in her deeds from the sheriff for the excess which she bought—the deed stating that it was for the excess of the homestead. It was recognized and called the homestead in the deed of trust to Crawford, which was one of the links in defendants' chain of title, and therefore, in law, was known to him. It would be singular if the McCoys should have the benefit of this allotment as

being a homestead for so many years, if they should now have the benefit of its not being a homestead. It may be, and probably is, a hardship on the defendants, who have purchased the property, and it seems paid a full and fair price for it. But it is no more than hundreds of other persons. have done—bought property when the title turned out to be defective. The trouble may be that they were badly advised, but that neither changes the facts nor the law. It is a matter of great public interest that homesteads, once allotted, and allowed to stand for years without objection or exception, should be considered settled. Suppose McCoy had been comparatively a young man, with a big family of young children, when this homestead was allotted to him, and no exceptions had been filed thereto, and defendants should have bought his homestead for a full price, and plaintiffs had, after awhile, said that the homestead was void; that Jacobs, a deputy, laid it off, and swore the appraisers; that it is twice as large as it should be, would he think it fair to set it aside and re-allot the homestead, and take half the land he purchased? We only mention this to show that it is like the most of questions—it has two sides to it. But hardships are said to be "the quicksands of the law," and we are not allowed to let them influence us in deciding what is the law.

We are of the opinion that this allotment was not void; that, at most, it was only irregularly laid off; that, if the matter alleged was such an irregularity as would have entitled a party excepting within the time and manner prescribed by the statute to have had it set aside (and we do not say that he would not have been so entitled), it has remained and been acquiesced in for too long a time for us to do so now, especially in this collateral proceeding. Therefore, under the authority of *Bevan v. Ellis,* 121 N. C., 230, we are obliged to hold that plaintiffs still have their statutory judg-

ment liens on the property allotted to W. A. McCoy as his homestead.

Affirmed.

FAIRCLOTH, C..J., (concurring in the result).   The plaintiffs obtained and docketed judgments in 1879 and 1880 against W. A. McCoy, and this action is to have a commissioner appointed to sell the homestead land of said McCoy to satisfy said judgments.   It is admitted that McCoy died insolvent in 1892, and that his youngest child was over twenty-one years of age when this action commenced.   Several issues were submitted without objection, and the case on appeal states that a jury trial was waived; the plaintiffs and defendants agreeing that the Court might find the facts and answer the issues.   Several years before his death said McCoy and wife sold his homestead to another, under whom the defendant Munday, claims title.   Each party introduced evidence, and his Honor answered the issues and rendered judgment in favor of the plaintiffs; *i. e.,* that said land be sold to pay plaintiffs' judgments.   Under a judgment against said McCoy, prior in date to plaintiff's, an execution thereon came to the hands of an acting deputy sheriff of Macon County, who summoned and swore a board of appraisers of the homestead and exemption of said McCoy, whose report was made and filed December 10, 1878, with the judgment and levy made on the excess, signed, "B. P. Jacobs, Deputy Sheriff."   The oath of office of said deputy was introduced by plaintiffs.   Said homestead was described by distinct boundaries, and the homesteader and the defendants have ever since been in possession of said homestead premises. The defendants objected to the introduction in evidence of the foregoing homestead return, because:   "(1) The law does not recognize such an officer as deputy sheriff.   (2) That a

deputy sheriff has no authority to administer an oath. (Objections overruled. Exception.)" This exception is the main contention in the case, to which the argument was chiefly directed, as well as the duties and liabilities of a sheriff, and his deputy *inter se* and to third parties. We are relieved from considering these two exceptions, on reason and authority. The homestead, as a matter of fact, was laid off by well-defined lines, whether regularly or irregularly, and no objection was made to it by exception, or appeal. The debtor accepted the assignment and has enjoyed the benefit thereof for more than twenty years, and the creditors have submitted to it for the same time. Both parties are thereby estopped from denying an accomplished fact, so long recognized by them. *Spoon v. Reid,* 78 N. C., 244; *Whitehead v. Spivey,* 103 N. C., 66, Herm. Estop., 949, 952. If either party is dissatisfied with the allotment, Code, sec. 519, *et seq.,* affords ample remedy. If these remedies are not availed of, the allotment can not be attacked collaterally by the debtor, or anyone claiming under him. His remedy is Code, sec. 519. *Welch v. Welch,* 101 N. C., 565; *Burton v. Spiers,* 87 N. C., 87. When the creditor and debtor have for a long time acquiesced in the allotment as it was made, and availed themselves of their rights and benefits thereunder, they are precluded from denying the validity of the allotment. *Cobb v. Halyburton,* 92 N. C., 652; *Ladd v. Byrd,* 113 N. C., 467.

Another exception made in the argument is that the Judge erred in not finding the facts. When facts are found at the trial, they are conclusive, and can not be reviewed by this Court, with few exceptions. If the answers to the issues failed to present all material facts, it was incumbent on the defendant to show by his exception what error was committed. This can only be done by averring that there was no evidence to support the finding, that competent, or incompe-

tent, evidence was rejected, or admitted, and that the Court refused, or failed, after request made in apt time, to pass upon a material issue, or question of fact, when there was evidence tending to support the same. *Fertilizer Co. v. Reams,* 105 N. C., 283.

The defendants also relied on seven years' adverse possession under color of title. That can not help the defendants, as statutes of limitation are suspended and will not run against any judgment due by the owner of a homestead, or homestead interest during the existence of such homestead. Acts 1885, chap. 359; *Formeyduval v. Rockwell,* 117 N. C., 320. In this case the homesteader died in 1892, and his youngest child is of full age and still living. Four years after plaintiffs' judgments were docketed, said McCoy and wife, Mary A. McCoy, conveyed their interest in said homestead lot to a trustee to secure creditors, and at said trustee's sale said Mary A. McCoy was the purchaser, and under her the defendants claim title. This conveyance to the trustee and his sale to Mrs. McCoy were subject to the lien of plaintiffs, acquired by their docketed judgments. No error.

Affirmed.