JAMES S. DODSON et al. v. L. W. McADAMS, Ext'r.

*Parent and Child—Grandparent—Presumption.*

1. If a grandparent receives his grandchild into his family as a member of it, they stand in the relation of parent and child, and no presumption is raised of a promise on the part of the grandparent to pay the grandchild for services rendered such as a child generally renders as a member of the family.

2. The presumption against the promise of the grandparent to pay for services in such case, may be overcome by evidence of an express promise on his part to pay for such services.

3. Where the evidence was that a grandchild resided with her grandfather as a member of his family, and did household work for him, and he declared several times that he intended to give her a part of his property as he would his children, and that she should be paid for the services she rendered him; *It was held,* no sufficient evidence to go to the jury to prove a promise on the part of the grandfather to pay her for her services.

4. The services of a child to its parent, or of a grandchild, to whom the grandparent stands *in loco parentis,* to such grandparent, are not gratuitous, but are presumed in the absence of evidence of an express promise, to be rendered as a recompense for the care and protection extended to the child.

(*Hussey* v. *Rountree,* Busb., 111; *Hudson* v. *Lutz,* 5 Jones, 217; *Williams* v. *Barnes,* 3 Dev., 349; *Young* v. *Herman,* at this Term; cited and approved).

CIVIL ACTION, tried before *Connor, Judge,* at August Term, 1886, of ORANGE Superior Court.

The action was brought to August Term, 1885, to recover on an alleged contract between John Whitaker, the testator of defendant, and the *feme* plaintiff, that services rendered to the testator should be compensated in his last will and testament.

Defendant denied any such contract, and alleged that the *feme* plaintiff lived with testator as a member of his family, and only performed such services as were customary for a girl in her station in life, and when married, the testator, who was her grandfather, provided more amply for her than he had done for his own daughters on like occasions.

The plaintiff testified that she lived with her grandfather (the testator) from the time she was two or three years old until she was married, at the age of 23; that after she was fourteen she kept house, cooked, milked, churned, sewed, knit, spun and wove, washed and ironed, and assisted on the farm in planting and cultivating grain, cotton and garden; also assisted in hauling wood and crops. No one else in family except her grandfather, grandmother and herself.

On cross-examination she stated that she was about two years old when taken to her grandfather's to live. Her aunt (wife of defendant) was there then and remained until she (the aunt) was married, with a short intermission. Her grandfather was 86 years old and quite feeble, and he never cultivated more than three quarters of an acre of cotton, and there was nobody else to do the work except her grandfather and herself, except when he hired the harvesting.

George Sykes, witness for plaintiff, saw *feme* plaintiff in the field helping her grandfather haul oats one time; also saw her in the cotton patch.

Henry Ray, witness for plaintiff, was at the testator's sometimes; saw plaintiff working about the house as other girls; witness was a blacksmith, and testator owed him a small

account, one dollar of which was settled by plaintiff's sewing. When testator took her she was a mere child, and he said if she stayed with him he expected to give her a part, as he did his other children.

On cross-examination witness stated that plaintiff was there as a member of the family, and was treated as well as other girls.

J. L. Tate, brother and witness for plaintiff, was at his grandfather's Christmas, 1879, and heard him talk about repairing the house; said he was not able to do it; intended it for Emmie, (the. *feme* plaintiff,) and she could do as she pleased about it; plaintiff was present.

Mrs. J. L. Tate, wife of above witness, at Christmas, 1879, heard testator say that when he was done with the house he intended it for the plaintiff, and she could do as she wished; plaintiff was present, but nothing was said about her services; have seen plaintiff cooking and doing work about the house..

Deposition of Mrs. W. Dodson, step-mother-in-law of plaintiff, was read as testimony for plaintiff, in which she states that testator was at her house after the marriage of plaintiff, and spoke in high terms of plaintiff, and said he intended she should be paid for her services to him; that Emmie had been a faithful child ever since she lived with him; she was really and truly willing to do anything he said, and she was a faithful child; she helped him to do any and all sorts of work a woman could do; there was nobody could do any more for him than Emmie did, and "she shall be and I intend she shall be paid for the work she has done."

George Riley, witness for plaintiff, six or seven years ago was cutting wood for testator, and heard him say that he intended the timber for the plaintiff after he was gone.

Mrs. McAdams, wife of defendant, as a witness for defendant, stated: I am a daughter of John Whitaker, the testator; plaintiff was a weak, sickly child, about two years

old; her mother was my sister and was very poor, and had a great many children; I asked her to let me take Emmie home, and father did so, and kept her until she was married; we expected she would go home when the war ended, but she did not; she had become attached to us and we to her; after she grew up father became dissatisfied with some of her associates, and he (the testator) asked her to go home, but she refused to do so; she was treated just as any other member of the family; helped my mother do her work, (cooking and other house work); and she did a good deal of weaving for the neighbors, but always kept the money, to which there was no objection.

This witness also stated that plaintiff had an abundance of bed clothes when married, which she with her mother's assistance made; the testator paid for her schooling one time; and she also went to a free school. When articles of dress were bought, the testator paid for hers if she had no money. When she moved away she was well provided for by the testator—household and kitchen furniture, and other things necessary for young people to begin housekeeping. "My father did a much better part by her than he was able to do for her (plaintiff's) mother or myself. My mother is now eighty-six years old, but was always an active, industrious woman, and up to within a year before plaintiff married, was able to do her own work."

On cross-examination Mrs. McAdams stated, that testator gave his personal property to her (this witness) and the plaintiff's mother, and his land to the witness's sons, upon condition they would care for their grandmother during life. Plaintiff did not refuse to leave because the testator had promised to make provision for her in his will.

Mrs. T. G. Mebane, witness for defendant, was on very intimate terms with Mrs. Whitaker, wife of the testator, and says she was very energetic and industrious—plaintiff was

treated just as a child in the family, but was taught to be industrious.

Patsey Brown, witness for defendant, lived near testator all her life, and is related to both parties to this suit; plaintiff was taken to the house of the testator when a mere child, and treated as one of his own children; her food and clothing would have been pay for a child treated as she was, until she was about twenty years old.

The following issues were submitted to the jury:

1. Did John Whitaker contract with *feme* plaintiff to compensate her for services rendered him, by a provision in his will, as alleged in the complaint?

2. What damage has plaintiff sustained by the breach of such contract?

3. Did the *feme* plaintiff perform services for the defendant's testator as alleged in the complaint?

4. Were said services rendered gratuitously?

5. What was the value of said services per annum for the three years prior to the time she left the house of John Whitaker?

The defendant asked the Court to instruct the jury:

1. That there was no evidence of a special contract that plaintiff should be compensated for services in the will of testator. This instruction was given.

2. That if the jury believe the plaintiff was there in the situation of a member of the family, and not as an hireling, she would not be entitled to recover. This instruction was refused.

3. The relation of grandfather and grandchild existing between the parties, and under the special circumstances of this case, the plaintiff having been taken to the house of testator when a mere infant, raises a presumption that the services were gratuitous. Instruction refused as asked.

4. In the absence of an express contract, a right of action accrued as the services were rendered on the implied promise,

and as there was no credit, the law implies that every month's services were to be paid for as they were performed. Instruction refused.

His Honor charged the jury, that the relation of grandfather and grandchild did not raise the presumption that the services of the plaintiff were gratuitous, but the jury might take into consideration all the circumstances under which the plaintiff was taken into and remained in the family, and if they believe such was the understanding between the parties, they should answer the issue in the negative. But if they believe that it was understood between the parties that such services were not gratuitous, they should find in the affirmative, and fix the compensation at such sum per annum as they thought upon the testimony was correct; that the burden of proof was upon the plaintiff.

There was a verdict and judgment for the plaintiffs, from which the defendant appealed.

*Mr. John Devereux, Jr.*, for the plaintiffs, relied on the case of *Hauser* v. *Sain*, 74 N. C., 552.

*Mr. R. H. Battle*, (*Mr. A. W. Graham* also filed a brief,) for the defendant.

MERRIMON, J. It seems to be settled law—certainly in this State—that if a grandfather receives his grandchild or grandchildren into his family, and treats them as members thereof—as his own children—he and they are *in loco parentis et liberorum*, and hence, if the grandchild in such case, shall do labor for the grandfather, as a son or daughter does ordinarily as a member of the family of his or her father, in that case, in the absence of any agreement to the contrary, no presumption of a promise on the part of the grandfather to pay the grandchild for his labor arises; the presumption is to the contrary. The grandchild, as to his labor or services so rendered in such case, is on the same footing as a

son or daughter. And this is so, after the grandchild attains his majority, if the same family relation continues. This rule is founded, in large measure, upon the supposition that the father clothes, feeds, educates and supports the child, and that the latter labors and does appropriate service for the father and his family in return for such fatherly care, and domestic comfort and advantage. The family relation and the nature of the service, rebut the ordinary presumption that arises when labor is done for a party at his request, express or implied, of a promise on his part to pay for it.

Applying this rule, this Court held in *Hussey* v. *Rountree*, Busbee 111 ; that though a step-father is not bound to support his step-children, nor they to render him any service, yet if he support them, or they labor for him, in the absence of an express agreement, they will be deemed to have dealt with each other as parent and child and not as strangers. And, in the subsequent case of *Hudson* v. *Lutz*, 5 Jones, 217 ; Chief Justice PEARSON said, citing the above cited case with strong approval, that " the same principle applies to a grandfather and child, when the one assumes to act *in loco parentis.* In our case, (that then under consideration,) this relation existed to all intents and purposes. The circumstance that the plaintiff was illegitimate, has no bearing on the application of the principle ; the ' old man,' in the fullness of his affection, forgave the transgression of his daughter, and allowed her and her child to live with him as *members of his family* up to his death. The relation of the parties rebuts the presumption of a special contract, and puts the idea that he was to be paid for furnishing a home, or they were to have ' a price ' for work and labor done, out of the question. In the language of RUFFIN, Judge, such claims ought to be frowned on by the Courts and juries. To sustain them, tends to change the character of our people, cool domestic regard, and in the place of confidence, sow jealousies in families."

In such cases, the ordinary rules applicable to parent and child will be applied, and hence it is not presumed that compensation will be paid on the part of the grandchild for board and clothing, nor on the part of the grandfather for labor and services. *Hussey* v. *Rountree, supra;* Shouler on Dom. Rel., §273.

But, the presumption against a promise to pay for such labor may be overthrown by an agreement to pay for the same, appearing in terms or by any proper proof to establish the same, as pointed out in *Williams* v. *Barnes,* 3 Dev., 349; *Young* v. *Herman, Adm.,* decided at the present Term; Shouler on Domestic Rel., §§269, 274.

Now, it appears in evidence in the present case, that the *feme covert* plaintiff was the granddaughter of the testator of the defendant; that she was taken by and lived with him from the time she was two or three years old until she was married, at the age of twenty-three years; that after she was fourteen years old, she did much of the domestic work in and about her grandfather's home, and occasionally worked in his small crop; that she lived with him as a member of his family, and was always treated just as one of his own children; he paid for her education—such as she received— and when she was married, he provided for her just as if she had been his own child; he had said at some time, in the presence of two or three witnesses, that if she remained with him, he expected to give her a part, just as he would his own children; one testified, that he said he intended his house for her; another, that he said she was a good girl, and she should be paid for her work, &c. She occasionally did some work for herself.

Accepting the evidence as true, there was none to prove a special agreement as alleged, between the testator and the *feme* plaintiff, that he would make provision in his will for her as compensation for her services, and the Court properly so instructed the jury. The testimony of the *feme* plaintiff,

indeed of all the witnesses—the whole of it—went to prove that she lived with her grandfather as a member of his. family, and she was uniformly so treated, she so worked, and there was no evidence to prove an express or implied agreement between herself and the testator, that she should receive from him compensation for her services, other than such as she received as a member of the family. His occasional casual declarations that he intended his home for her —that she was a good girl, and should be paid for her services, were not of themselves alone evidence to go to the jury to prove such agreement, although they, with other competent facts, might make such evidence. *Young* v. *Herman, Adm., supra;* Shouler on Dom. Rel., §269. By such agreement is meant the mutual assent and understanding of the testator and the *feme* plaintiff, appearing by express terms, or from such facts and circumstances as show it by reasonable implication. The assent and understanding of one of the parties, without that of the other, is not sufficient; there can be no agreement without such mutual assent and understanding, and this must expressly appear, or it must appear by just implication from the evidence.

The appellant in substance, requested the Court to instruct the jury, that if the *feme* plaintiff was simply a member of the testator's family and so treated, as the evidence tended to prove, then she could not recover. This the Court declined to do. In this there was error. The appellant, in view of the evidence, was entitled to that instruction, or the substance of it, which was not given. On the contrary, the Court instructed the jury, "that the relation of grandfather and grandchild did not raise the presumption that the services of the plaintiff were gratuitous." It is true, such services were not presumed to be "gratuitous," but they were in contemplation of law, nothing to the contrary appearing, rendered in consideration of the care, protection and advantage the *feme* plaintiff had and derived from her grand-

father, and the relation did raise the presumption that the plaintiff should receive only that compensation.

There is error. The appellant is entitled to have a new trial. To that end let this opinion be certified to the Superior Court according to law. *It is so ordered.*

Error.                                    Reversed.