The plaintiff brought this special proceeding to obtain dower in the lands specified in the petition as the widow of E.H. Grant, who died intestate. The defendants are his heirs at law. In their answer they allege that the said intestate was not the owner of the lands at the time of his death or for a long time prior thereto. They allege that he acquired the same prior to 1867, and was married to the plaintiff prior to that time. The plaintiff made reply as follows:
That she admits there was a pretended sale made of the said lands by which several valuable tracts of land, worth several thousand dollars, were pretended to be sold under execution for the inconsiderable sum of $221.48 in favor of A. Burgin, administrator of J. L. Carson, against John D. Hall and E.H. Grant, but avers that the said pretended sale was made to defeat, hinder, delay and to defraud the creditors of the said E.H. Grant.
That she admits that J. W. Grant was ostensibly the purchaser, being the last and highest bidder at the said pretended sale, for $1,000, which was never paid by the said J. W. Grant, but she avers that the said J. W. Grant bid off the said land at said pretended sale under an agreement with his father, E.H. Grant, that the said J. W. Grant should buy the land and hold it in trust for the use and benefit of the *Page 513 
said E.H. Grant, and after his death then for the use and benefit of the heirs at law of the said E.H. Grant, with intent to hinder and defeat plaintiff of her dower.
That in pursuance of such secret trust, the said E.H. Grant lived upon the said land, used, occupied, enjoyed, controlled, took and received the rents and profits of the same until his death in March, 1889.
There was evidence that the intestate said he was surety for his brother, and didn't wish to pay that debt and a debt to one (712) Hall, and that was the reason he had let the land go to sale; that he continued to manage the lands and take the rents as before; that he had the land surveyed for division among his children, and asked that his wife should not be informed of the divisions; that the defendant James W. Grant never exercised any control of the land or claimed it as his own; that the land was worth some $5,000 or $6,000, and was sold for a debt of $273, and bid off by J. W. Grant at $1,000; that intestate built a dwelling house upon it subsequently to the sale; that there was evidence tending to show improper relations between intestate and one Polly Parker, whose daughter lived on a part of the land, but that the widow did not know but that she had bought it; that the land was sold at the instance of intestate, who requested that his homestead should not be allotted; that he told the sheriff the balance of the bid beyond the debt could be arranged, and that he need not bother about that; that he did not pay all of his debts; that the son purchased with the proceeds of his personal labor before he was twenty-one years of age.
The following issues were submitted to the jury, and they responded thereto as indicated at the end of each:
1. Were the lands of E.H. Grant bid off by the son in pursuance of an agreement and arrangement between the father, E.H. Grant and the son, J. W. Grant? Answer: Yes.
2. Was such agreement between them made with intent to defraud the creditors of the father? Answer: Yes.
3. Was such agreement between them made with intent to deprive the plaintiff of her dower? Answer: Yes.
4. Were the lands purchased at sheriff's sale paid for with the money of the father? Answer: Yes.
5. Were the lands purchased with the money of the father and under an agreement and arrangement that the same were to remain in fact the property of the father, and under his own control? (713) Answer: Yes.
In charging the jury on the fourth issue, among other things not excepted to, the court told the jury that the father was entitled to the *Page 514 
services of the child while the child was under twenty-one years of age, in the absence of any valid arrangement to the contrary; and in the present case, if the land claimed to be bought by J. W. Grant at the sheriff's sale, was paid for by money earned by J. W. Grant while he was under twenty-one years of age and living with his father, said money was the property of the father, and if this money so earned was the purchase price of the property, or the money so earned, together with other money supplied by the father, was the purchase money of the lands, they should answer the fourth issue, "Yes." That if the purchase price of the property was money belonging to J. W. Grant from other sources, and earned by him after he became twenty-one, then they should answer the issue, "No."
Defendants excepted.
Defendants moved for a new trial on the third issue, for that there was not sufficient evidence to support the verdict of the jury on that issue.
The court declined to allow the motion, gave judgment for the plaintiff, and the defendants appealed to this Court.
The clear presumption is that the father is entitled to the earnings of his son until the latter arrives at the age of twenty-one years; and if he continues thereafter to remain with his father as a member of his family, the presumption is that his labor is gratuitous. He may, however, show the contrary. The ground of such presumption is, that the son received from the father parental (714) support, protection, education, clothing and like suitable provisions, and his labor is, hence, due and belongs to the father, unless the contrary be shown. Dobson v. McAdams, 96 N.C. 149;Young v. Herman, 97 N.C. 280, and the authorities cited in these cases; Winchester v. Reid, 53 N.C. 377; the first exception cannot therefore be sustained.
It does not appear that the appellants excepted to the refusal of the court to grant the motion for a new trial, though it seems they may have intended to do so. The exception should appear. But clearly there was evidence bearing upon the third issue. The facts and circumstances attending the alleged fraudulent sale of the property and the occupancy and free use of the same after such sale by the husband intestate constituted evidence to go to the jury to prove the purpose to fraudulently defeat the right of the plaintiff, and it was the province of the jury *Page 515 
to determine its weight and effect. McGee v. McGee, 26 N.C. 105. The exercise of discretion on the part of the court in refusing to grant the motion for a new trial is not reviewable here.
Affirmed.
Cited: Whitaker v. Hamilton, 126 N.C. 465.