RONALD GREENE v. L. B. JACKSON.

(Filed 23 December, 1925.)

**1. Contracts—Agreement—Offer and Acceptance.**

A valid contract is the agreeing together of the minds of the parties upon the subject-matter thereof, and where it is evidenced by a proposal and acceptance contained in a correspondence thereon, the acceptance must be unconditional.

**2. Same — Letter — Correspondence — Leases — Cost of Construction of Building.**

Where a contract by correspondence for the renting of a certain floor of an office building to be erected, between the owner and his architect, the latter proposing to lease the offices of this floor at a certain per cent of the cost to the owner, the contractor to specifically name the cost thereof in his contract for the erection of the building, and later the owner writes that it was found to be impossible to arrive at the cost of this floor as agreed upon, but that they could doubtfully arrive thereat from the cost of materials and that of construction, a reply that the architect agreed to the proposition and would have to see the bill for materials, labor, etc., is an unconditional acceptance, the provision therein relating only as to the method necessary for him to ascertain the cost is immaterial.

**3. Demurrer—Pleadings.**

Upon demurrer to the sufficiency of the allegations of the complaint to state a cause of action, the allegations are taken as admitted.

APPEAL from *Oglesby, J.,* at July Term, 1925, of BUNCOMBE. Error.

The plaintiff alleges: "That on or about 21 December, 1922, the defendant entered into an agreement with the plaintiff whereby the said defendant was to lease to the plaintiff the thirteenth story of a certain building, which defendant was to erect on the south side of Pack Square, in the city of Asheville, county and State aforesaid, said lease to run for a period of five years from the date of the completion of said building; that the consideration for said lease, according to said agreement, was to be a yearly rental equal to 16% of the cost of erecting the thirteenth story of said building, provided that said annual rental should not exceed 16% of $5,000, which for the purpose of fixing said rental was stipulated as the maximum cost of erecting said thirteenth story; that said contract and agreement between the plaintiff and defendant was reduced to writing and it is embodied in a certain letter of the date of 21 December, 1922, from the defendant to the plaintiff, and a certain letter from the plaintiff, of the date of 23 December, 1922, to the defendant, and pursuant to the agreement made between plaintiff

and defendant, the letters referred to, and the design of plaintiff of said thirteenth story, and the written specifications prepared by plaintiff for said building in accordance with said design and which were adopted and used by defendant in procuring bids for the erection of same, including said thirteenth floor, and in which said specifications is the following provision relating to said thirteenth floor: .

" 'The office space and promenade are to be the future office space of the architect for the building. As his lease is based on percentage of the cost of the space, each contractor is requested in his bid to show a separate amount for the construction of the architect offices, which will be in addition to the construction required if this portion of the building were not to be built. Allow one-third (⅓) of cost of metal, lumber, roof construction, and deduct cost of five (5) ply composition Johns Manville 20-year roofing over area considered in this estimate. This bid shall not include any wood paneling, wall decoration, travertino floors, wall finish, ornamental plaster, ornamental truss or other woodwork, or metal facing. In general, construction work within area marked in crayon on blue print shall be included in this estimate.'

"And the defendant awarded a contract for the construction of said building and said thirteenth floor according to said design, plans and specifications so prepared and furnished by plaintiff to defendant and including the aforesaid provision, and the defendant prosecuted the work of constructing said Jackson Building and said thirteenth floor to completion in substantial accordance with said design, plans and specifications of plaintiff, and on or about 26 June, 1924, when said thirteenth floor was practically completed, the defendant further duly ratified the contract so entered into between him and the plaintiff by letter dated on that day. That said contemplated building was erected by the defendant, L. B. Jackson, and is now fully completed, and said thirteenth story so agreed to be leased by the defendant to the plaintiff as aforesaid, was constructed for the occupancy of the plaintiff pursuant to said agreement according to the plan and design agreed upon, so that said thirteenth story could be occupied by the plaintiff as a studio, or as offices in connection with plaintiff's practice as an architect. That upon the completion of said building and of said thirteenth story thereof, the plaintiff requested the defendant to execute a lease and deliver possession of said thirteenth story of said premises, according to the contract and agreement hereinbefore mentioned; but the defendant, in violation of his contract and agreement as aforesaid, failed and refused to execute said lease and deliver possession of said premises." Plaintiff alleges damage.

The letters are as follows:

GREENE *v.* JACKSON.

Mr. Ronald Greene,                    Asheville, N. C., 21 December, 1922.
Asheville, N. C.

Dear Sir:

Confirming verbal conversation I agree to erect for you on the roof of my new office building which I am going to erect on South Pack Square a studio for your offices. Said studio not to cost me over five thousand dollars, and you to take same on a five-year lease at 16% yearly of the cost you to erect same.

Yours very truly,          L. B. JACKSON.

Mr. L. B. Jackson,                              23 December, 1922.
Asheville, North Carolina.

Dear Sir:

I hereby accept your proposal to erect on the roof of your office building .to be erected on South Pack Square, a studio for my offices according to my design, the cost of which shall not exceed five thousand dollars ($5,000), with the understanding that I shall have full access to the accounts and methods of determining said cost; and I further agree to lease this addition at the rate of 16% yearly of the cost to you to erect same.          Yours very truly,          RONALD GREENE.

Mr. Ronald Greene,                    Asheville, N. C., 26 June, 1924.
Asheville, N. C.

Dear Sir:

Mr. L. L. Merchant has just showed me a letter which you wrote him, dated 24 June, in which you requested that he furnish you with a detailed statement· of the cost of 13th floor, which you are to occupy. It has been absolutely impossible for the foreman to keep the cost of this floor separate as the men have been working back and forth in such a way that no one could keep the labor and material separate. I would suggest that we have Mr. Merchant and some other reliable contractor to estimate the labor and material used on this floor, and in this manner you and I can arrive at what would be a fair and reasonable basis. I feel sure that we will have no trouble in getting together for I know that I do not want anything but what is right, and I feel sure that this is the way you feel about it.

Yours very truly,          L. B. JACKSON.

The court rendered the following judgment: "This cause coming on to be heard before his Honor, John M. Oglesby, judge presiding, and a jury, and being heard, and after the selection and empaneling of the jury

and the reading of the pleadings, the defendant entered a demurrer *ore tenus* and moved to dismiss the action on the ground that the complaint failed to state a cause of action, and pending consideration of said demurrer and upon intimation that the court would sustain the demurrer, the plaintiff asked to be permitted to file an amended complaint, which was allowed over defendant's objection, and after said amended complaint was so filed by the plaintiff and defendant again demurred *ore tenus* and moved to dismiss the action, because the complaint as amended fails to state a cause of action, and the court being of the opinion that neither the complaint nor the amended complaint states a cause of action, and that the action should be dismissed; it is therefore, upon motion of counsel for the defendant, ordered and adjudged that this action be, and the same is hereby dismissed, and that the plaintiff pay the costs to be taxed by the court." Plaintiff excepted to the judgment, assigned error and appealed to the Supreme Court.

*Carter, Shuford, Hartshorn & Hughes and Mark W. Brown for plaintiff.*
*Lee, Ford & Coxe for defendant.*

CLARKSON, J. Plaintiff was the architect for what is known as the "Jackson Building." The correspondence in the record was between the plaintiff, architect, and the defendant, the then owner of the land on which the building was built and now president of Asheville Investment Company, a corporation, that now owns the building. Defendant made a motion *ore tenus* and moved to dismiss the action on the ground that the complaint failed to state a cause of action. *Pridgen v. Pridgen, ante,* 102; *Snipes v. Monds, ibid.,* 190; *Smith v. Smith, ibid.,* 764.

This brings us to consider the only question in the case: Was there a binding contract between plaintiff and defendant? "A contract is the agreement of two minds—the coming together of two minds on a thing done or to be done." *Overall Co. v. Holmes,* 186 N. C., 431.

We think the construction given by defendant of the contract, with relation to the parties, too narrow. The contract should be construed, taking into consideration all three of the letters and the building contract in reference to the 13th floor—the studio. Letter from Jackson to Greene, 21 December, 1922: (1) offer to erect a studio for Greene in new "Jackson Building," (2) not to cost Jackson over $5,000, Greene to have 5-year lease at 16% yearly of the cost you to erect same. Letter, Greene to Jackson, 23 December, 1922: I hereby accept your proposal to erect studio for my offices—my design—cost shall not exceed $5,000. Understanding to have access to accounts to determine cost. Further, the lease at rate of 16% yearly of the cost to you to erect same. "You

to erect same" in Jackson's letter, as we understand it, is same as "according to my design" in Greene's letter. In these two letters the only immaterial difference in the offer and acceptance is access to accounts to determine cost.

In procuring bids for the erection of the studio, defendant took the bids on the design, plan and specifications drawn by plaintiff, Greene, as follows: "The office space and promenade are to be the future office space of the architect (Greene) for the building. As his lease is based on percentage of the cost of the space, each contractor is requested in his bid to show a separate amount for the construction of the architect offices, which will be in addition to the construction required if this portion of the building were not to be built," etc. Nothing was said in the plans as to cost limit—contractor to keep separate amount for construction as lease is based on this cost.

The building was erected in accordance with plaintiff Greene's design, plan and specifications, and agreed to by defendant, who was the owner and gave the contract out according to agreed plans. In this architect's plan, if there had been any question from the letters, Jackson accepted (1) the design and (2) the lease—"future office space of the architect." The letter of Greene to Jackson says "yearly," showing acceptance of lease was for five years. The "Jackson Building" was completed about 26 June, 1924, and the "studio" built in compliance with the design of the architect's plan agreed upon by owner, Jackson. The "studio" was ready for occupancy by plaintiff, no disagreement up to this time as to any of the terms. In corroboration of this view, Jackson wrote Greene that, according to his (Greene's) request, it was absolutely impossible to keep cost of floor separate, could not keep the labor and material separate. Under the Greene letter to Jackson, in reference to this cost put in the plan of the "studio" and agreed upon to "show a separate amount for the construction of the architect offices," plaintiff was entitled to "full access to the accounts," etc., to estimate rate of 16%.

This is the liberal view we take of the dealing of plaintiff and defendant in relation to the writings, the language, the purpose, each party's relationship to the building of the studio (one the architect and the other the owner). With the immaterial matters, the cobwebs, removed, taking the entire transaction into consideration, we think they came to an understanding—their minds met and there was a binding contract between them. Plaintiff, under the contract, had the right of access to the accounts to estimate the cost as a basis of yearly rental.

In *Cozart v. Herndon,* 114 N. C., 254, *Shepherd, C. J.,* says: "It is well settled that in order to constitute a contract there must be a 'proposal squarely assented to.' If the proposal be assented to with a qualification, the qualification must go back to the proposer for his

adoption, amendment or rejection. If the acceptance be not unqualified, or go to the actual thing proposed, then there is no binding contract. A proposal to accept or acceptance based upon terms varying from those offered is a rejection of the offer. 1 Wharton on Con., 4. 'The respondent is at liberty to accept wholly, or reject wholly, but one of these things he must do; for if he answer not rejecting, but proposing to accept under some modification, this is a rejection of the offer.' 1 Parson on Con., 476. 'It amounts to a counter-proposal, and this must be accepted and its acceptance communicated to the proposer, otherwise there is no contract.' Pollock on Con., 10." *Golding v. Foster,* 188 N. C., p. 216; *Overall Co. v. Holmes, supra; May v. Menzies,* 184 N. C., 152; *Green v. Grocery Co.,* 153 N. C., 409. We think the construction we give fully meets the requirements of the law so clearly set forth in the above decision of *Chief Justice Shepherd.*

The letter of 26 June, of Jackson to Greene, says: "I feel sure that we will have no trouble in getting together for I know that I do not want anything but what is right, and I feel sure that this is the way you feel about it." Get together on what? "Detailed statement of the cost of the 13th floor *which you are to occupy"?* Everything else was agreed and settled upon.

The demurrer *ore tenus* admits the truth of the facts alleged in the complaint. *Smith v. Smith, supra.*

From the view we take, the demurrer is overruled.

Error.