L. J. BROWN v. J. E. WILLIAMS, EXECUTOR OF THE WILL OF A. F. WILLIAMS, SR., DECEASED.

(Filed 7 November, 1928.)

1. **Executors and Administrators—Allowance and Payment of Claims— Claims Against Decedent for Services Rendered—Contracts.**

In order to a valid contract it is required by law that the minds of the contracting parties come definitely together upon its subject-matter; and when one unrelated to the testator brings action against the executor of the testator to recover for services rendered under an express contract, evidence of such contract is insufficient to be submitted to the jury that tends only to show that testator had expressed to third persons his intention to leave the plaintiff by will an amount in value or money that would more than repay him for the services he had rendered.

2. **Same—Quasi-Contracts—Quantum Meruit.**

While services performed by members of the decedent's family by certain of its members are ordinarily presumed to have been given gratuitously, and therefore an action against the personal representative upon a *quantum meruit* may not be maintained, it is otherwise when the plain-

BROWN *v.* WILLIAMS.

tiff in the action is unrelated to the decedent, and the law will imply a promise to pay for the value of such services when a definite compensation has not been fixed by contract between the parties.

**3. Same.**

In proper instances one performing valuable services to the deceased may recover for their value for three years preceding his death upon a *quantum meruit.*

CONNOR, J., not sitting.

APPEAL by defendant from *Harris, J.,* and a jury, at March Term, 1928, of DUPLIN. New trial.

The plaintiff complains and alleges: (1) In the original complaint: That he was no relation to A. F. Williams, defendant's testator, but from about 19 April, 1923, to 19 April, 1926, three years prior to the death of A. F. Williams, he rendered valuable services to said A. F. Williams, setting them forth in detail, and they were reasonably worth $45 a month, totaling $1,620; that the services were rendered at his request and for his benefit and accepted by him. (2) In the amended complaint, that he rendered valuable services, setting them forth in detail, to said A. F. Williams, from 16 December, 1919, continuously up to the date of the death of A. F. Williams 19 April, 1926, a period of six years and four months, reasonably worth and totaling $4,620; that the said A. F. Williams, while said services were being performed, and he was receiving the use, benefit and comfort of the plaintiff's constant work and labor, contracted and agreed with the plaintiff that at his, the said A. F. Williams' death, he would leave the plaintiff well provided for, and would more than repay plaintiff for said services, and would give him something that the plaintiff would be proud of, and the plaintiff, relying upon the said promises of the said A. F. Williams to thus pay plaintiff for all his work and labor, as above set out, continued to do the same till the death of the said A. F. Williams, and he never received anything therefor from said A. F. Williams, substantially alleging an express contract to make testamentary provision. This was denied by defendant.

The evidence bearing on the express contract to make testamentary provision is as follows: Evidence of the different witnesses: *"He said that if it were not for Luther* (speaking of plaintiff), *he didn't know what he would do; that Luther was his dependence, and he would have to reward him for it. He didn't say how he was going to reward him. . . . He said he was going to reward Luther for his help."* . . . *"He told me he was going to give him something he would be proud of and appreciate when he was gone."* , . . "He said 'Luther is my main help and my aim is to give him something *that will reward him when I am dead and gone.'* And he said 'Luther has done more for me

than my own children, and I appreciate everything you all have done for me, and your little children are so sweet to run in here and pump my water.' . . . He said 'I am going to reward Luther with something *he will be proud of and appreciate when I am dead and gone.'*" None of these statements were made in the presence of plaintiff, and they were made at intervals and mostly during the last years of A. F. Williams' life.

Plaintiff lived with his father, who rented from A. F. Williams a farm of some 60 acres, about 150 to 200 yards from the Williams home. A. F. Williams and his wife practically lived alone. They were both, during the period, in declining health, and both died at the age of about 80 years. Mr. Williams died 20 April, 1926, and Mrs. Williams 20 June, 1926.

The issues submitted to the jury and their answers thereto were as follows:

"1. Did the plaintiff, L. J. Brown, and the defendant's testator, A. F. Williams, enter into the contract alleged in the complaint? Answer: Yes.

"2. If so, did the plaintiff, L. J. Brown, perform services and do work and labor for said A. F. Williams, under said contract, as alleged in the complaint? Answer: Yes.

"3. What was the fair and reasonable worth of said services and labor of said L. J. Brown? Answer: $1,824."

The defendant tendered the following issue: "What amount, if any, is plaintiff entitled to recover of defendant for labor and services performed within three years next prior to the death of defendant's intestate (testator)?" This was refused by the court below. Defendant excepted and assigned error.

At the close of plaintiff's testimony defendant moved that the cause of action of plaintiff, so far as it alleged any contract to make a testamentary provision for the plaintiff by the defendant's testator, A. F. Williams, be nonsuited. This was refused by the court below. Defendant excepted and assigned error.

*Beasley & Stevens, Gavin & Boney for plaintiff.*
*A. McL. Graham and H. D. Williams for defendant.*

CLARKSON, J. The questions involved:

1. Was the evidence offered by the plaintiff of an express contract to make testamentary provision for the plaintiff sufficient to be submitted to the jury? We think not.

In *Overall Co. v. Holmes,* 186 N. C., at p. 431-2, it is said: "A contract is 'an agreement, upon sufficient consideration, to do or not to do

a particular thing.' 2 Blackstone Com., p. 442. There is no contract unless the parties assent to the same thing in the same sense. A contract is the agreement of two minds—the coming together of two minds on a thing done or to be done. 'A contract, express or implied, executed or executory, results from the concurrence of minds of two or more persons, and its legal consequences are not dependent upon the impressions or understandings of one alone of the parties to it. It is not what either thinks, but what both agree,' " citing numerous authorities. See *Bank v. Watson*, 187 N. C., 107; *Refining Corporation v. Sanders*, 190 N. C., 203; *Greene v. Jackson*, 190 N. C., 789; *Gravel Co. v. Casualty Co.*, 191 N. C., 313.

There is nothing to indicate, in the expressions made by defendant's testator, any certain or definite promise or contract, either express or implied, to make a testamentary provision in his will in favor of plaintiff. The expressions were not even made to plaintiff, but to others. It was an appreciation and intention, but not an obligation. *Dodson v. McAdams*, 96 N. C., 149; *Avitt v. Smith*, 120 N. C., 392.

It is well settled in this jurisdiction that where services are performed under a contract that compensation is to be provided in the will of the party receiving the benefit, and if the party breaches the contract an action lies for the anticipatory breach thereof. If the party breaches the contract by dying without a will or if testator makes no provision in the will, then an action lies for the breach of such contract at the death of the party. The plaintiff may have an action on *quantum meruit*. *Miller v. Lash*, 85 N. C., 51; *Laurence v. Hester*, 93 N. C., 79; *Freeman v. Brown*, 151 N. C., 111; *Helsabeck v. Doub*, 167 N. C., 205; *Shore v. Holt*, 185 N. C., 312; *Fertilizer Co. v. Eason*, 194 N. C., 244.

2. Where there is no sufficient evidence to show an express contract between the parties, and the parties are not related, can plaintiff recover on a *quantum meruit?* We think, under the facts and circumstances of this case, that it is a question to be submitted to the jury.

In *Callahan v. Wood*, 118 N. C., at p. 757, it is said: "The general rule is that when work is done for another the law implies a promise to pay for it, and it is based on the presumption arising out of the ordinary dealings among men." *Bailey v. Rutjes*, 86 N. C., at p. 520-1; *Blount v. Guthrie*, 99 N. C., 93; *Dorsett v. Dorsett*, 183 N. C., 354. See *Stokes v. Taylor*, 104 N. C., at p. 397; *Dorsey v. Corbett*, 190 N. C., at p. 788. It will be noted that plaintiff is not related to defendant's testator.

In *Dunn v. Currie*, 141 N. C., at p. 127, it is said: "These cases establish the principle that certain relations existing between the parties raise a presumption that no payment was expected for services rendered or support furnished by the one to the other. The presumption standing by itself repels what the law would otherwise imply, that is, a

promise to pay for them, but this presumption is not conclusive, and may in its turn be overcome by proof of an agreement to pay, or of facts and circumstances from which the jury may infer that payment was intended by one of the parties and expected by the other. There is no fixed rule governing all cases alike, but each case as it arises must be determined upon a consideration of all the facts and circumstances, subject, however, to the legal bearing on the liability of the particular relation existing at the time between the parties."

The presumption applies to family relationship such as father and child; step-father and child; grandfather and child, etc. In *Dorsett v. Dorsett, supra,* to husband and wife.

*Ruffin, J.,* in *Williams v. Barnes,* 14 N. C., at p. 352, says: "But this much I must say, that the jury had at least a right to pass upon the weight of the actual presumptions arising from the relation, both in estimating the wages which the plaintiff ought to be allowed, if any, and in determining whether he was to have any, except what the mother chose in her natural kindness to bestow. In other words, whether they were to live together after, as they had done before the son became of age. I think such claims, without probable evidence of contract, ought to be frowned on by courts and juries. To sustain them tends to change the character of our people, cool domestic regard, and in the place of confidence sow jealousies in families." See *Pridgen v. Pridgen,* 190 N. C., at p. 107.

We think the evidence should be submitted to the jury on the question of *quantum meruit* for the three years prior to the death of defendant's testator. *Edwards v. Matthews, ante,* p. 39. There must be a

New trial.

CONNOR, J., not sitting.