WILLIAM B. JACKSON, JR. v. LOUIS RICHARD BOBBITT AND ROBERT L. SATTERFIELD, ADMR. OF THE ESTATE OF JAMES LAMAR ROBERTS, ADDITIONAL PARTY DEFENDANT.

WILLIAM JUNIOR LONG v. LOUIS RICHARD BOBBITT AND ROBERT L. SATTERFIELD, ADMR. OF THE ESTATE OF JAMES LAMAR ROBERTS, ADDITIONAL PARTY DEFENDANT.

GROVER VERNON JOHNSON v. LOUIS RICHARD BOBBITT AND ROBERT L. SATTERFIELD, ADMR. OF THE ESTATE OF JAMES LAMAR ROBERTS, ADDITIONAL PARTY DEFENDANT.

SAMUEL LEE EVANS v. LOUIS RICHARD BOBBITT AND ROBERT L. SATTERFIELD, ADMR. OF THE ESTATE OF JAMES LAMAR ROBERTS, ADDITIONAL PARTY DEFENDANT.

LAWRENCE THOMAS SWANN v. LOUIS RICHARD BOBBITT AND ROBERT L. SATTERFIELD, ADMR. OF THE ESTATE OF JAMES LAMAR ROBERTS, ADDITIONAL PARTY DEFENDANT.

(Filed 20 January, 1961.)

**1. Courts § 2—**

A challenge to the jurisdiction of the court may be made at any time, and it is the duty of the court to take notice of want of jurisdiction at any stage of the proceeding and dismiss the suit.

**2. Courts § 3—**

The Superior Court is a court of general state-wide jurisdiction. Constitution of North Carolina, Article IV, § 2.

**3. Courts § 2—**

Where a court of general jurisdiction acts in the matter, there is a presumption of jurisdiction and the burden is upon the party asserting want of jurisdiction to show it.

**4. Courts § 3—**

Where the Superior Court denies motion for judgment of nonsuit on the ground of want of jurisdiction without finding any facts, and the record fails to show any requests for findings, it will be presumed that the trial judge duly found that the court had jurisdiction over the subject matter and the parties unless the contrary appears from the record.

5. **Same: Master and Servant § 84— Evidence held not to show that action was within exclusive jurisdiction of Industrial Commission.**

In these actions to recover for negligent injury against the personal representative of the driver of the car in which plaintiffs were riding, there was nothing in the pleadings to show that the actions were within the purview of the Workmen's Compensation Act, and the evidence in this respect tended to show only that all of the plaintiffs were employees of intestate's brother, that the employer or someone in his behalf customarily provided them transportation to and from work, that intestate worked for his brother on occasions after school, and that on the occasion in suit intestate, driving a car, picked them up early from work because of rain, and that the accident in question occurred while he was driving them back from work. The evidence failed to show that intestate was paid any regular salary or that the transportation of the employees to or from work was a part of the contract of employment, express or implied, or was other than gratuitous. *Held:* The denial of motions for compulsory nonsuit on the ground that the actions were within the exclusive jurisdiction of the Industrial Commission will not be disturbed, it not appearing from the record that the injuries were by accident arising out of and in the course of plaintiffs' employments, and it being presumed that the trial court found all facts necessary to give it jurisdiction. G.S. 97-10.

APPEAL by defendant Robert L. Satterfield, Administrator of the estate of James Lamar Roberts, deceased, additional party defendant, from *Hall, J.*, June 1960 Civil Term, of ORANGE.

Five separate actions to recover damages for personal injuries resulting from the actionable negligence of defendant Satterfield's intestate James Lamar Roberts, deceased, in the operation of a Dodge automobile registered in the name of the defendant Louis Richard Bobbitt, which actions were consolidated and tried together.

On the afternoon of 15 April 1958 the five plaintiffs were passengers in the Dodge automobile, which was being driven on Highway No. 751 between Durham and Hillsboro by James Lamar Roberts, a boy 16 or 17 years old. There was a drizzling, steady rain. A man in front was driving an automobile about 50 miles an hour. James Lamar Roberts followed this automobile about a hundred yards. He turned to the left to pass at a speed of 60 or 65 miles an hour, his left hind wheel hit a soft shoulder, and he skidded off the road 50 yards, pulled back on the road, lost control of his automobile, ran off the road into a ditch and then into a tree. In the collision with the tree the five plaintiffs were injured, and James Lamar Roberts was killed.

All of the complaints are identical, except as to different allegations of injuries. In each of the five complaints it is averred "that at all times herein complained of, James Lamar Roberts was the agent, servant, and employee of the defendant Louis Richard Bobbitt . . .

acting within the scope of his employment and authority and in furtherance of the business of the defendant (Bobbitt)."

The answers in the five actions are identical. Each answer consists of a general denial of the allegations of the complaint, except it admits the residence of the parties, the death of James Lamar Roberts, and the appointment and qualification of Satterfield as administrator of his estate.

Five sets of issues were submitted to the jury. They are identical, except that different plaintiffs' names appear in the first and third issues. The issues in the Jackson case are as follows:

"1. Was the plaintiff, William B. Jackson, Jr., injured by the negligence of James Lamar Roberts, as alleged in the complaint?
Answer: Yes.

"2. Was James Lamar Roberts at the time the agent or employee of the defendant, Louis Richard Bobbitt, and acting within the scope and course of his employment or agency, as alleged in the complaint?
Answer: No.

"3. What amount, if any is the plaintiff, William B. Jackson, Jr., entitled to recover?
Answer: $12,500.00."

In each one of the five cases the jury answered the first issue Yes, the second issue No, and the third issue in different amounts.

From five separate judgments in accord with the verdict in each case, defendant Robert L. Satterfield, administrator of the estate of James Lamar Roberts, appeals.

*Henry Godwin (N. H. Godwin) for plaintiffs, appellees.*
*Robert L. Satterfield and Smith, Leach, Anderson & Dorsett for defendant, appellant.*

PARKER, J. Defendant Satterfield assigns as errors the denial of his motion for judgment of compulsory nonsuit made at the close of plaintiffs' evidence, and the denial of a similar motion renewed at the close of all the evidence.

Defendant contends that all five plaintiffs and James Lamar Roberts were employees of Bobby Roberts, and all five plaintiffs were injured by accident arising out of and in the course of their employment, and, therefore, their remedy being exclusively under the North Carolina's Workmen's Compensation Act, the trial court was without jurisdiction, and should have compulsorily nonsuited all five actions.

All complaints allege that James Lamar Roberts was an employee,

agent and servant of the defendant Louis Richard Bobbitt. All answers merely deny these allegations. The pleadings in the case contain no allegations that plaintiffs and James Lamar Roberts were employees of Bobby Roberts. There is no plea by defendant that the court lacked jurisdiction. Plaintiffs' brief states, "the first time Workmen's Compensation coverage for these plaintiffs was raised, was at the close of plaintiffs' evidence." However that may be, a challenge to the jurisdiction of the court may be made at any time, *Hart v. Motors,* 244 N.C. 84, 92 S.E. 2d 673, even in the Supreme Court, *MacRae & Co. v. Shew,* 220 N.C. 516, 17 S.E. 2d 664.

If a court finds at any stage of the proceedings that it is without jurisdiction, it is its duty to take proper notice of the defect, and stay, quash or dismiss the suit. *In re Davis,* 248 N.C. 423, 103 S.E. 2d 503; *Henderson County v. Smyth,* 216 N.C. 421, 5 S.E. 2d 136.

The Superior Court is a court of general state-wide jurisdiction. N. C. Constitution, Article IV § 2; *S. v. Pender,* 66 N.C. 313; *Rhyne v. Lipscombe,* 122 N.C. 650, 29 S.E. 57; *Lovegrove v. Lovegrove,* 237 N.C. 307, 74 S.E. 2d 723.

Plaintiffs are entitled to call to their aid the principle of *omnia rite acta praesumuntur* and the *prima facie* presumption of rightful jurisdiction which arises from the fact that a court of general jurisdiction has acted in the matter. *Williamson v. Spivey,* 224 N.C. 311, 30 S.E. 2d 46, and cases cited.

This Court said in *Dellinger v. Clark,* 234 N.C. 419, 67 S.E. 2d 448: "The court below had the power to consider and inquire into the facts in respect to, and determine, subject to review, the question of its jurisdiction. (Citing authority). And the court having acted in the matter, every presumption not inconsistent with the record will be indulged in favor of jurisdiction. (Citing authority). The burden is on the party asserting want of jurisdiction to show such want."

The allegations of all five complaints show that the court had jurisdiction over the parties and the subject matter of all five actions, and there is nothing in the answers to show the contrary. "Unless the contrary appears from the record, it will be presumed, with respect to a court of general jurisdiction, that all the facts necessary to give the court jurisdiction to render the particular judgment existed and were duly found, that the court has determined every matter on which its jurisdiction depends, and that every step necessary to give it jurisdiction has been taken." 21 C.J.S., Courts, p. 150.

What the Court said in *Powers v. Memorial Hospital,* 242 N.C. 290, 87 S.E. 2d 510, is apposite: "Whether the hospital had the required number of employees is a jurisdictional fact to be found by

the court. (Citing authority). But in the absence of a request for such finding, it will be assumed that, in allowing the motion for judgment as of nonsuit on the ground stated, the court found the essential facts."

The record shows that the trial judge denied the motions for judgments of compulsory nonsuit without stating any reason for his ruling. So far as the record shows, no request was made by defendants, or any one of them, that he find the facts as to jurisdiction. It will be presumed that in denying the motions for judgments of compulsory nonsuit the trial judge duly found and determined that the court had jurisdiction over the subject matter of all five cases and of the parties, unless the contrary appears from the record.

In reference to appellant's contention that the court was without jurisdiction, plaintiffs' evidence shows the following: All five plaintiffs live in Orange County, and were on 15 April 1958 employees of Bobby Roberts, who at the time was constructing two houses in the city of Durham. Paul Roberts, a brother of Bobby Roberts, was supervisor for Bobby Roberts. James Lamar Roberts was a 17-year-old brother of Paul and Bobby Roberts. James Lamar Roberts went to school in the morning, and worked for Bobby Roberts in the afternoon. Paul and James Lamar Roberts live in Orange County, and it seems that Bobby Roberts lives in the same county.

On 15 April 1958 plaintiffs Long, Johnson and Jackson rode to Durham to work with Paul Roberts, who was driving a pickup truck. Plaintiff Evans rode to work that day with Bobby Roberts, who was driving another automobile. It does not appear with whom plaintiff Swann rode to work. Swann and Evans were working on the house Bobby Roberts was looking after. The other plaintiffs were working on the house where Paul Roberts was. That afternoon it began raining. James Lamar Roberts came up driving the Dodge automobile registered in the name of defendant Bobbitt, and Bobby Roberts told plaintiffs Evans and Swann to get in the automobile with him and go home. Then James Lamar Roberts drove the Dodge to where Paul Roberts was working, and Paul Roberts told plaintiffs Long, Johnson and Jackson to get in the automobile with him and go home. On the way home the wreck occurred in which plaintiffs were injured and James Lamar Roberts was killed. Plaintiff Swann testified: "James worked there for Bobby in the afternoon and was working there this particular afternoon before you all (sic) left." Plaintiff Evans testified: "James Roberts went to school in the morning and in the afternoon he worked on the job. . . . I had

ridden with James Roberts in this Dodge automobile before. I had ridden in the pickup with Bobby and Paul and in the station wagon."

Plaintiffs Evans, Johnson, Swann and Jackson upon being recalled as witnesses testified on recross-examination in substance that it was part of the understanding and arrangement with Bobby Roberts that he would furnish them transportation to and from their homes in Orange County to Durham, and he did so by himself or by an employee. Plaintiff Long upon being recalled as a witness testified on recross-examination: "I rode down to Durham with Mr. Roberts every day that I went and home with him every day. We didn't have any arrangement that way but there was another boy who would bring me back in the evening. He worked for Mr. Roberts too. He never told me that it was our understanding or arrangement that either Mr. Roberts or one of his employees would see that I got there and bring me back, but that is the way that we usually and customarily did it. I was expecting the first time that I went for one of his employees to come and take me to the job. I didn't have any way to go and I was expecting someone to come by and pick me up. I knew the boy was coming. I had an understanding with the boy that was coming to get me, who was an employee of Mr. Roberts."

Plaintiff Long had been working for Bobby Roberts three days, although he had worked for him before. It was the first time he had ever ridden with James Lamar Roberts. Plaintiff Evans had ridden with James Lamar Roberts before, but he didn't pick him up very often to take him home. It was the first time plaintiff Johnson had ridden with James Lamar Roberts: usually, he and plaintiffs Jackson and Long rode together on a truck. Plaintiff Jackson had ridden with James Lamar Roberts dozens of times.

The defendants called to the stand two witnesses, the defendant Bobbitt and Paul Roberts.

Defendant Bobbitt's testimony is to this effect: The Dodge automobile James Lamar Roberts was driving at the time of the wreck was owned by the mother of the Roberts', and the title to it was in her name. In January 1957 Paul Roberts had the title to this automobile put in Bobbitt's name so he could borrow some money on it for Paul Roberts. Paul Roberts told him he had had some financial difficulties, and was unable to borrow money himself. Bobbitt borrowed money on the automobile, and turned it over to Paul Roberts. Bobbitt testified: "I didn't object to Paul Roberts keeping the car and driving it because it was his car."

Paul Roberts testified in substance: James Lamar Roberts went to school. Sometimes in the evening he would come to Durham. Some-

times he would come by, and if my brother Bobby had anything for him to do, he would do it. He doesn't know whether his brother Bobby paid James Lamar Roberts anything for his work: his brother Bobby gave him spending money. He doesn't know whether James Lamar Roberts worked for a salary or not. James Lamar Roberts was 17 years old. James Lamar Roberts with two plaintiffs came by the house where he was working and he told the plaintiffs working with him to go home with James. At that time defendant Bobbitt had no connection with Bobby Roberts. On 15 April 1958 he drove the Dodge automobile from his home in Hillsboro to the job in Durham carrying some of the help with him.

So far as the defendants' evidence is concerned, there is none tending to show that Bobby Roberts, the employer of plaintiffs, furnished them the means of transportation to and from the place where their work was to be performed as an incident to their contracts of employment, or as a part of their contracts of employment, or that Bobby Roberts paid the plaintiffs anything to cover their expenses of travelling to and from their work as an incident to their contracts of employment, or that on the afternoon of the wreck James Lamar Roberts was an employee of Bobby Roberts and was paid for his work. It would seem that Bobby Roberts was available as a witness, but defendants did not call him as a witness. He could have testified as to whether James Lamar Roberts was an employee of his on the afternoon of the wreck, as to whether or not he paid him any salary when he worked for him, and as to whether or not he had agreed with the plaintiffs to furnish them transportation to and from their work as an incident to their contracts of employment with him, or as a part of their contracts with him, or that he paid them anything to cover their expenses of travelling to and from their work as an incident to their contracts of employment. Defendants have offered no evidence that the transportation of these plaintiffs to and from their work was other than gratuitous or a mere accommodation.

The Court said in *Lassiter v. Telephone Co.*, 215 N.C. 227, 1 S.E. 2d 542, quoting from 1 Honnold on Workmen's Compensation, § 110: " 'The rule has been established in accordance with sound reason that the employer's liability in such cases depends upon whether the conveyance has been provided by him, after the real beginning of the employment, in compliance with one of the implied or express terms of the contract of employment, for the mere use of the employee, and is one which the employees are required, or as a matter of right are permitted, to use by virtue of the contract. Pursuant to this rule, the employee is in the course of employment if he has a

right to the transportation, but not if it is gratuitous, or a mere accommodation. A workman injured while riding to or from his work in the conveyance of a third person is not ordinarily entitled to compensation.' "

This is written in Schneider, Workmen's Compensation, Third or Permanent Ed., Vol. 8, § 1746 (a):

> "Courtesy rides given by an employer do not, generally, give rise to liability under compensation statutes. The transporation must be furnished as a real incident of the employment to come within the rule. In other words, there must exist an express or implied obligation on the part of the employer to provide transportation.
>
> "An employee who has completed his day's work and in company with other employees is riding on a conveyance of the employer upon a public street, pursuant to permission, but not to any obligation on the part of the employer by contract, express or implied, to furnish such transportation, is not engaged in performing any services for his employer, the word 'furnish' implying something more than 'permission.'
>
> "Where an employer merely permits or authorizes the use of his facilities by an employee to return home, it is not considered as being in the course of employment, but as a convenience to the employee. An injury happening under such circumstances does not bring the employee within the compensation act."

It is well settled law that a contract is not what either party thinks, but what both agree. *Overall Co. v. Holmes,* 186 N.C. 428, 119 S.E. 817; *Brown v. Williams,* 196 N.C. 247, 145 S.E. 233. "To constitute a valid contract the parties must assent to the same thing in the same sense, and their minds must meet as to all the terms." *Goeckel v. Stokely,* 236 N.C. 604, 73 S.E. 2d 618.

The Court said in *Warner v. Leder,* 234 N.C. 727, 69 S.E. 2d 6: " . . . an employee, subject to the provisions of a Workmen's Compensation Act, whose injury arose out of and in the course of his employment, cannot maintain an action at common law against his co-employee whose negligence caused the injury . . . and that the provision in G.S. 97-10 which gives the injured employee or his personal representative 'a right to recover damages for such injury, loss of service, or death from any person other than the employer,' means any other person or party who is a stranger to the employment but whose negligence contributed to the injury. And we further hold that such

provision does not authorize the injured employee to maintain an action at common law against those conducting the business of the employer whose negligence caused the injury."

This Court said in *Ward v. Bowles*, 228 N.C. 273, 45 S.E. 2d 354: "While the rights of the employee, as against a third party after claim for compensation is filed, are limited, G.S. 97-10, there is nothing in the Act which denies him the right to waive his claim against his employer and pursue his remedy against the alleged tortfeasor by common law action for negligence."

There is nothing in the record before us to show that the plaintiffs here or any one of them, ever filed a claim for compensation against Bobby Roberts, or that the Industrial Commission issued an award, or that Bobby Roberts ever admitted liability in writing.

G.S. 97-2 of our Workmen's Compensation Act defines the term "employee," so far as relevant here, thus: "The term 'employee' means every person engaged in an employment under any appointment or contract of hire or apprenticeship, express or implied, oral or written, including aliens, and also minors, whether lawfully or unlawfully employed."

When the wreck in which plaintiffs were injured occurred, they were riding in an automobile registered in the name of the defendant Bobbitt. This automobile had never been owned by their employer Bobby Roberts. There is no evidence Bobby Roberts ever had any control over it. Bobby Roberts told plaintiffs Evans and Swann to get in this automobile and go home. Paul Roberts told plaintiffs Long, Johnson and Jackson at another place and time to get in this automobile and go home.

In our opinion, it does not appear from the record that there existed an express or implied obligation on the part of Bobby Roberts to provide transportation for plaintiffs to and from their work, and it does not appear from the record that James Lamar Roberts at the time of the wreck was an employee of Bobby Roberts within the purview of our Workmen's Compensation Act, or that he was conducting any business for Bobby Roberts at the time, but it does appear from the record before us that the transportation furnished these plaintiffs was gratuitous or a mere accommodation or courtesy rides, and, therefore, plaintiffs were not injured by accident arising out of and in the course of their employment. Injuries to plaintiffs happening under such circumstances do not bring them within our compensation act. Appellant has not successfully carried the burden of showing want of jurisdiction. Such facts appearing from the record, we indulge the presumption that all the facts necessary to give the court

jurisdiction to render the judgments existed and were duly found, and that the court determined every matter on which its jurisdiction depends.

Plaintiffs offered sufficient evidence to show that their injuries were proximately caused by the actionable negligence of James Lamar Roberts. Appellant in his brief has no argument to the contrary.

Appellant's assignments of error to the denial of his motions for judgments of compulsory nonsuit are overruled.

Appellant's only other assignment of error is to the signing of the judgments. The judgments were entered in accord with the verdicts. The judgments of the court below are

Affirmed.