***********
In accordance with the directives of the North Carolina Court of Appeals, the Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. Plaintiff and defendant E. B. Davis Electric Company (hereafter referred to as "defendant Davis Electric") were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Defendant Davis Electric was self-insured on 11 February 1995 with CompTrust AGC/Brentwood Service as the administrator.
3. Defendant Junius Burney, deceased, (hereafter referred to as defendant Burney) was non-insured on 11 February 1995.
4. Defendant Burney was a subcontractor to make high voltage terminations for defendant Davis Electric on 11 February 1995 in relation to a construction project at Pembroke State University at Pembroke, North Carolina.
5. Defendant Davis Electric did not secure a certificate of compliance regarding workers' compensation coverage or a written waiver regarding his right to coverage from defendant Burney regarding the Pembroke State University on or before 11 February 1995.
6. Plaintiff was a passenger in a truck owned and driven by defendant Burney on 11 February 1995.
7. Defendant Burney died as a result of the motor vehicular accident on 11 February 1995.
8. Plaintiff's medical records from Southeastern Regional Medical Center are admitted into evidence as Stipulated Exhibit #1.
9. Plaintiff's medical records from Duke University Medical Center are admitted into evidence as Stipulated Exhibit #2.
10. Plaintiff's medical records from Cumberland County Emergency Medical Service are admitted into evidence as Stipulated Exhibit #3.
11. Plaintiff's medical records from Cape Fear Valley Medical Center are admitted into evidence as Stipulated Exhibit #4.
12. Plaintiff's medical records from Heritage Family Physicians are admitted into evidence as Stipulated Exhibit #5.
13. Plaintiff's medical records from Fayetteville Diagnostic Center are admitted into evidence as Stipulated Exhibit # 6.
14. Plaintiff's medical records from Fayetteville Orthopedic Clinic are admitted into evidence as Stipulated Exhibit #7.
15. Plaintiff's records from Pro Active Therapy are admitted into evidence as Stipulated Exhibit #8.
16. The North Carolina Collision Report dated 11 February 1995 is admitted into evidence as Stipulated Exhibit #9.
17. Defendant Davis Electric's Answers and Objections to Plaintiff's First Set of Interrogatories are admitted into evidence as Stipulated Exhibit #10.
18. Plaintiff's Responses to Defendant Davis Electric's First Set of Interrogatories to Plaintiff are admitted into evidence as Stipulated Exhibit #11.
19. The construction contract between defendant Davis Electric and the State of North Carolina through Pembroke State University, dated 28 December 1993, is admitted into evidence as Stipulated Exhibit #12.
20. The construction contract between Ellis-Walker Builders, Inc., and the State of North Carolina through Pembroke State University, dated 28 December 1993 is admitted into evidence as Stipulated Exhibit #13.
21. A check made payable to "Mickey Tew" in the amount of $5.00, dated 10 October 1995 from Mrs. J. L. Burney is admitted into evidence as Stipulated Exhibit #14.
22. An Attending Physician or Health Care Provider form signed by Dr. Blue on 12 October 1995 is admitted into evidence as Stipulated Exhibit #15.
23. A work rate from Fayetteville Orthopedic Clinic, P. A., dated 28 July 1995 and signed by Dr. Askins is admitted into evidence as Stipulated Exhibit #16.
24. A newspaper article entitled "71-year old killed in traffic accident" is admitted into evidence as Stipulated Exhibit #17.
25. A newspaper article entitled "One killed, five injured in wreck" is admitted into evidence as Stipulated Exhibit #18.
26. Accident report dated 11 February 1995 is admitted into evidence as Stipulated Exhibit #19.
27. Plaintiff's 1994 W-2 Tax and Wage Statement is admitted into evidence as Stipulated Exhibit #20.
28. Statement from King Electric of Fayetteville dated 2 March 1995 is admitted into evidence as Stipulated Exhibit #21.
29. A Robeson County map is admitted into evidence as Stipulated Exhibit #22.
30. A hand drawn map of the accident location is admitted into evidence as Stipulated Exhibit #23.
31. Plaintiff's 1994 State and Federal Tax Forms and W-2 are admitted into evidence as Stipulated Exhibit #24.
32. Plaintiff's 1995 Tax Returns and W-2s are admitted into evidence as Stipulated Exhibit #25.
33. Six (6) photographs of the accident scene are admitted into evidence as Stipulated Exhibits #26A-F.
 ***********
In accordance with the directives of the North Carolina Court of Appeals, the Full Commission makes the following:
 FINDINGS OF FACT
1. On 11 February 1995 plaintiff was a 52-year old male employed by the City of Fayetteville on 12 April 1962. Plaintiff's job with the city included working as a lineman with high voltage wires both on electrical poles and underground.
2. During plaintiff's employment with the City of Fayetteville, plaintiff became acquainted with defendant Junius Burney, who was one of the superintendents with the City of Fayetteville.
3. Defendant Junius Burney retired from the City of Fayetteville in approximately 1989. After retiring, defendant Junius Burney continued to do work as an independent electrical contractor in the surrounding area.
4. Plaintiff, while still employed by the City of Fayetteville, would occasionally work sporadically "on the side" for defendant Junius Burney. Plaintiff performed this work for defendant Junius Burney on weekends, after regular hours or on vacation days. Plaintiff worked in this manner for defendant Junius Burney four of five times in the past nine or ten years.
5. Defendant Junius Burney paid plaintiff $20.00 per hour during the four or five times plaintiff previously worked for defendant Junius Burney.
6. On the evening of 10 February 1995 defendant Junius Burney requested that plaintiff assist him with an electrical job at Pembroke State University on 11 February 1995. Defendant Junius Burney's regular assistant had the flu and was unable to do the job.
7. Between 6:30 a.m. and 7:00 a.m., plaintiff went to defendant Burney's home on 11 February 1995. Plaintiff left his own vehicle at defendant Burney's home in Fayetteville and rode with defendant Burney to the work site in Pembroke pursuant to the terms of Mr. Burney's employment contract with plaintiff. Defendant Burney had always provided transportation to the work sites because the equipment was located in defendant Burney's truck and it allowed the two men to arrive at the work site at the same time. Defendant Junius Burney drove his vehicle, a white 1987 GMC pickup truck. Plaintiff only took his hard hat and gloves when he got into defendant Burney's truck.
8. Plaintiff and defendant Burney arrived at Pembroke State University approximately 8:00 a.m. on 11 February 1995. Upon arrival, defendant Burney retrieved the key to the electrical switch cabinet from an employee of E. B. Davis Electrical. The cabinet which held the high voltage switches is kept locked unless someone authorized is working on the equipment.
9. Plaintiff and defendant Burney worked approximately eight hours and terminated several high voltage cables. During these terminations both plaintiff and defendant Burney worked inside the electrical cabinet.
10. At the end of the workday defendant Burney and plaintiff got back in defendant Burney's truck to travel home. The two men had only traveled a few miles from the work site when plaintiff and defendant Burney engaged in a conversation. As a result of this conversation, defendant Burney made a U-turn at the intersection of State Road 1340 and 1515 and headed back in the direction of the work site at Pembroke State University.
11. Within seconds after defendant Burney made the U-turn, a collision occurred. Defendant Burney died instantly as a result of the collision. Plaintiff was thrown clear of the pickup truck and sustained serious injuries to his intestines, kidneys, ribs, back and shoulders.
12. Plaintiff was transferred via ambulance to Southeastern Regional Hospital in Lumberton where he received treatment for his injuries. As a result of the 11 February 1995 accident, plaintiff's left kidney was permanently damaged and nonfunctioning. A few weeks later plaintiff underwent surgery at Duke University Medical Center to remove part of his intestines, damaged as a result of the 11 February 1995 motor vehicle collision.
13. At the time of hearing plaintiff was 55 years of age. Plaintiff's primary adult work experience included 33 years as a lineman. This work is highly skilled but involves heavy manual labor. Due to the injuries plaintiff sustained in the 11 February 1995 motor vehicle accident, plaintiff is no longer physically able to perform work as a lineman. Plaintiff completed high school but has no additional vocational training. Plaintiff has an above average IQ, but is deficient in reading skills. Plaintiff's physical problems resulting from the automobile accident include low back pain, some limited mobility of his left shoulder, blurred vision and right kidney damage. Additionally, as a result of damage from the collapse of one of his lungs, plaintiff experiences a lack of stamina. Plaintiff can only lift 15-20 pounds, stand for 30-40 minutes, walk for a half mile or sit for 20-30 minutes. Plaintiff cannot stoop, kneel, crouch or crawl due to his injuries. Plaintiff can only climb a few steps and has poor balance. Plaintiff is a poor candidate for vocational retraining due to his age, education, previous work experience and physical disabilities as a result of the accident on 11 February 1995.
14. As a result of the 11 February 1995 injury, plaintiff is incapable of earning wages in the same or any other employment.
15. At the time of the accident, plaintiff's position as a lineman with the City of Fayetteville paid approximately $46,000.00 per year. As a result of the accident, plaintiff was unable to return to this job. Plaintiff took medical leave with his job with the City until he retired on 31 December 1995.
16. Defendant Junius Burney was non-insured for workers' compensation on 11 February 1995. There is insufficient evidence to determine whether defendant Burney had three or more employees on that date.
17. Defendant Davis Electric is a North Carolina company engaged in the business of performing electrical service work. Defendant Davis Electric subcontracted with defendant Junius Burney to make high voltage terminations and failed to secure a certificate of compliance regarding workers' compensation coverage or a written waiver regarding his right to coverage from defendant Junius Burney. Defendant Davis Electric had three or more regular employees on February 11, 1995.
18. Defendant Davis Electric did not make payments to subcontractor Junius Burney for work performed at Pembroke State University on or before 11 February 1995. However, a payment was made to the widow, Mildred Burney, on 20 March 1995, for services provided by defendant Burney in the amount of $1,085.00 for 15 high voltage terminators.
19. Sometime following the accident, plaintiff's wife drove him over to Mildred Burney's house. Plaintiff at first was not going to accept any payment for his services on the day of the accident but Ms. Burney insisted on paying plaintiff what her late husband owed. Plaintiff told Ms. Burney $150.00 would be sufficient payment but Ms. Burney only had $145.00 in cash at the time. Ms. Burney later mailed plaintiff a check for $5.00.
20. Plaintiff worked sporadically for defendant Junius Burney. Due to the shortness of time plaintiff worked for defendant Junius Burney and the nature or terms of the employment, it is impractical to compute plaintiff's average weekly wage based on a 52 week period. Plaintiff's actual wages from defendant Burney, which are based on one day's labor on 11 February 1995, are insufficient to calculate an average weekly wage. A person of the same grade and character as plaintiff employed in the same class of employment in plaintiff's community as an electrical lineman would have earned $15.00 per hour, or $600.00 per week prior to 11 February 1995; however, plaintiff's actual earnings in his job as a lineman or line erector with the City of Fayetteville exceeded $15.00 per hour. It is fairest to all parties to compute plaintiff's average weekly wage based on wages of a person of the same grade or character of employment as plaintiff employed in the same community.
21. Defendant Davis Electric was not prejudiced by any alleged delay in the filing of plaintiff's Form 18. Defendant Davis Electric knew of the fatal accident which occurred on 11 February 1995 and the fact and circumstances surrounding the accident because they paid defendant Junius Burney's widow rather than paying defendant Junius Burney for services provided at Pembroke. Defendant Davis Electric cannot now raise a N.C. Gen. Stat. § 97-22 defense in contentions when it knew about the wreck all along. Any failure to follow through with investigations was their own choice.
22. Plaintiff was injured while commuting between work and home. There is no evidence in the record to support a finding that the employer-provided transportation was pursuant to the terms of an employment contract, or that plaintiff had a contractual right to employer-provided transportation. Therefore, plaintiff's injuries did not arise out of and in the course of his employment with defendant Junius Burney.
 ***********
In accordance with the directives of the North Carolina Court of Appeals, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On 11 February 1995 plaintiff was an employee of defendant Junius Burney and was engaged in the course or trade of high voltage electrical work, which is the regular business of defendant Junius Burney. N.C. Gen. Stat. § 97-2(2).
2. On 11 February 1995 plaintiff was injured by accident while leaving work. There is no evidence upon which to conclude that plaintiff's injuries are compensable because his accident fell within an exception to the "coming and going" rule. The transportation provided by defendant-employer was not pursuant to a contractual obligation on the part of defendant-employer, but rather constituted a mere accommodation. Accordingly, plaintiff is not entitled to compensation under the Act.Jackson v. Bobbitt, 253 N.C. 670, 117 S.E.2d 806 (1961).
 ***********
In accordance with the directives of the North Carolina Court of Appeals, the Full Commission enters the following:
 AWARD
1. Decedent's claim for benefits under the Act must be and is hereby denied.
2. Each side shall bear its own costs.
This the ___ day of May, 2002.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ LAURA K. MAVRETIC COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER